[No. 30922-6-I.    Division One.    October 24, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v.
CHRISTOPHER DAVID SAMANIEGO, *Appellant*.

*Robert M. Leen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Roger David-heiser, Deputy,* for respondent.

GROSSE, J. — Christopher Samaniego appeals the Judgment and Sentence entered on one count of possession of cocaine with intent to deliver, while armed with a deadly weapon. We affirm, rejecting the arguments that evidence of anonymous calls to a pager was inadmissible hearsay, and that a knife with a 4-inch blade is not a deadly weapon per se, regardless of its use.

## FACTS

In mid-October 1991, police officers were on a routine patrol at the south end of Capitol Hill in Seattle. The area is

a well-known drug trafficking area. A car driven by Samaniego passed police officers who noticed the car had a defective license plate light. One of the officers thought he recognized a passenger as a person with an outstanding arrest warrant. This passenger put the hood up on his sweatshirt so his face would be in shadow. The officers stopped the car and made inquiries. A female passenger had an open container of alcohol. The passenger in the back seat, although not the person "recognized" by the officer, did have outstanding warrants and, when asked, admitted so. In plain view, the officers saw a 30-gram rock of cocaine on the floor in front of the driver's seat under Samaniego's feet. Samaniego was placed under arrest.

During a search incident to the arrest, officers found a telephone pager and $256 in cash on Samaniego's person. He was then placed in a patrol car. While searching the vehicle, police found a small quantity of drugs in the glove compartment and a knife with a 4-inch blade wedged between the driver's seat and the center armrest. Samaniego was transported to the police station.

While processing the arrest and the evidence, Samaniego's pager "beeped" and a telephone number was displayed. A police officer called the number. The man who answered the officer's call asked if the caller was "Chris", to which the officer responded, "yes". The person then said he needed a "double up", known street language regarding quantity and price of cocaine.

The policeman arranged that "he" (Samaniego) would meet him at the caller's apartment. However, the officer could not obtain an address without raising suspicion so the conversation ended. About 45 minutes later, the same man called back inquiring as to why Chris had not appeared. The officer, still pretending to be Samaniego, set up a meeting with the caller at a grocery store on Pacific Highway South. During this call a second party indicated his desire for drugs as well.

After getting a description of the caller's car and clothes, the officer contacted Tukwila police and asked them to attempt "contact" with the callers. No contact was made.

The officer taking the pager calls indicated he failed to write down or remember the telephone number.

By amended information, the State charged Samaniego with the crime of possession of cocaine with the intent to deliver, while armed with a deadly weapon. Before trial, Samaniego moved to suppress the State's use of the statements made by the unidentified callers as part of the case against him.

The State claimed the statements were admissible because they were not hearsay in that they were not offered for the truth of the matter asserted. Instead, the State intended to offer these statements as relevant to demonstrate the use of the cocaine in Samaniego's possession. The trial court ruled that the statements were inadmissible as hearsay. The State asked the trial court to reconsider and argued that even if the statements were hearsay, they were admissible pursuant to ER 804(b)(3), as statements against the callers' penal interest.

Samaniego argued that the State failed to prove (1) the unavailability of the witnesses, (2) that the statements were against the declarants' penal interest, or (3) that the statements were reliable. He further objected because the admission of the statements would violate his constitutional right to confront witnesses.

Upon reconsideration, the trial court found the statements were admissible pursuant to ER 804(b)(3). The court found that the officers made reasonable efforts to locate the unidentified witnesses, and further held that the statements were reliable as made against penal interests.

Because of the ruling, Samaniego agreed to a trial by the bench on the record and files of the case. The court found him guilty of the charges and he was sentenced within the standard range, plus a deadly weapon enhancement. Samaniego appeals, claiming the trial court erred in admitting hearsay testimony of the unidentified persons contacted. Further, Samaniego claims the trial court erred finding that the knife with a 4-inch blade constituted a "deadly weapon" within the meaning of RCW 9.94A.125.

## Deadly Weapon

Samaniego contends the trial court erred in concluding as a matter of law that the knife found wedged between the driver's seat and the armrest of the car was a deadly weapon pursuant to RCW 9.94A.125. We disagree.

First, counsel for Samaniego is incorrect in claiming there is no evidence in the record as to the length of the blade of the knife. Although the specific length was never brought out at the suppression hearings, the trial was one on stipulated facts, which included the police reports. There are several notations in these reports which indicate the length of the blade is 4 inches.

The crux of Samaniego's argument is that under RCW 9.94A.125 a weapon is no longer "per se" deadly, but rather there must be sufficient evidence in the record to establish (1) the knife's capacity to inflict death, and (2) the fact that from the manner in which it was used it was likely to do so. Samaniego claims the evidence here is insufficient for that purpose.

The State argues there is a 2-tiered structure used to determine the existence of a deadly weapon under RCW 9.94A.125. Specifically, the State argues there is a list of "per se" deadly weapons, the use or manner of use of which need not be shown to constitute a deadly weapon. Secondly, there are those implements which have to be shown to be deadly by the manner in which they are used. The State relies on the case law construing the former deadly weapon statute, RCW 9.95.040. *See State v. Thompson*, 88 Wn.2d 546, 564 P.2d 323 (1977); *State v. Sorenson*, 6 Wn. App. 269, 492 P.2d 233 (1972). Samaniego questions this argument because the statutory language has been modified and argues that current case law does not support the State's position.

RCW 9.94A.125 states in pertinent part:

> In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime . . ..

For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: . . . any knife having a blade longer than three inches . . ..

■ We agree with the State that the Legislature did not intend to change prior law for three reasons. First, it defies common sense to believe that the Legislature would have approved a provision that effectively weakens the policy of deadly weapon enhancements given the current social climate and obvious problem with violent crime. Second, the legislative history of RCW 9.94A.125 indicates no intent to change prior law. Third, recent cases adopt an approach to interpreting this statute that is consistent with prior law, although they do not resolve the precise arguments raised here.

The 2-tiered system, per se deadly weapons and deadly weapons in fact, was created by our State Supreme Court in *State v. Thompson*, 88 Wn.2d 546, 564 P.2d 323 (1977). The comments to RCW 9.94A.125 from the sentencing guidelines commission are instructive and clear. The commission explained that the definition and procedural requirements for the deadly weapon allegation and findings are carried over from existing law.

Those few cases interpreting RCW 9.94A.125 specifically direct the reader to case law interpreting its predecessor statute, former RCW 9.95.040. *See State v. Sullivan*, 47 Wn. App. 81, 82-83, 733 P.2d 598 (1987); *State v. Cook*, 69 Wn. App. 412, 416-17, 848 P.2d 1325 (1993).[1]

The recent case of *State v. Valdobinos*, 122 Wn.2d 270, 858 P.2d 199 (1993) is instructive. There, the Supreme Court held that the evidence of an unloaded rifle found under a bed in a bedroom of a residence in which drugs were found, without more, was insufficient to qualify the defendant as "armed" because the weapon was not accessible and readily available

---

[1]*State v. Sullivan, supra,* also supports the proposition that a deadly weapon under the Sentencing Reform Act of 1981 is the same as that under RCW 9.95.040.

for offensive or defensive purposes. Subsumed within the *Valdobinos* holding we can discern that the court would have found the rifle a deadly weapon per se had it been readily available. *State v. Valdobinos*, 122 Wn.2d at 281-82 (citing *State v. Sabala*, 44 Wn. App. 444, 723 P.2d 5 (1986)). *Sabala* is instructive in that the defendant was "armed" with a deadly weapon (under RCW 9A.04.110(6)) when the gun was under his seat in the car he was in, within reach, and thus easily accessible.

Here, the knife with its 4-inch blade was readily available to Samaniego for offensive or defensive purposes. Thus, Samaniego was armed with it. A knife with a 4-inch blade is per se a deadly weapon under the old law; it comes within the current statutory list of deadly weapons, and without any extrinsic evidence, is an instrument that has the capacity to produce death.

On this last point, it is obvious that there is a certain class of instruments that require nothing more than their existence for proof of their nature, *e.g.*, a loaded firearm or a knife with a blade over 3 inches. Therefore, if one is armed with such a device, as our courts have defined the term "armed", then it follows that the statute is satisfied by simply giving its language plain and ordinary meaning, apart from reference to prior law or legislative history.

The trial court is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PEKELIS, C.J., and AGID, J., concur.