# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 69077-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHANE ALLEN SKJOLD, | ) | |
| | ) | FILED: October 14, 2013 |
| Appellant. | ) | |

GROSSE, J. — The statutory definition of "restrain" is not an essential element of the crime of unlawful imprisonment and failure to include the statutory definition in an information does not render the information deficient. Accordingly, the information in this case was not deficient. Further, the evidence was sufficient to convict the appellant of first degree burglary, and the issues he raises in his statement of additional grounds are without merit. For these reasons, we affirm.

## FACTS

On December 2, 2011, at around 2:00 a.m., Richard Romero, Jr. was awakened from his sleep by a pounding on his apartment door. Romero was the maintenance person at the apartment complex and thought the knock was by a tenant who was having an emergency, so he walked into the living room, unlocked the door, and opened it. When Romero opened the door, appellant Shane Skjold walked into the living room, grabbed Romero by the throat, pushed him to the ground, pulled out a knife from underneath his sweatshirt, and repeatedly asked Romero "where his stuff was." Skjold kneeled over Romero

and waved the knife in front of him. While this was happening, Romero's 9-year-old son was sitting in a chair in the living room and started crying. Romero was very scared and did not know what Skjold was talking about.

Romero managed to get up, and Skjold told him they needed to go to Skjold's apartment because there was "stuff" missing from his apartment. Before they left, Skjold asked Romero to give him the key to his (Skjold's) apartment. Romero gave Skjold the key and the two men went to Skjold's apartment.

Inside Skjold's bedroom, Skjold was upset and said that somebody had taken something from his closet. He started throwing drawers. He told Romero, "It's gone. It's gone." Skjold accused Romero of taking whatever he was talking about. Romero tried to calm Skjold down and convince him that he had not taken anything from his apartment. Skjold, who had been pacing in the bedroom, got quiet, bent over as if he was going to pick something up, stood up, and hit Romero on the side of his face. The punch completely collapsed most of the bones on the left side of Romero's face and caused eight separate fractures.

After the punch, Romero, who was bleeding profusely from the face, felt "trapped" and told Skjold he would not say anything about the incident. Skjold told Romero he could leave, and Romero returned to his apartment.

The next morning, Romero called his father, who drove him to the hospital. Romero told his father what had happened to him the previous night. At first, Romero told the hospital personnel that he had slipped, but when they expressed disbelief that a slip could result in such serious injuries, he said he had been assaulted. From the hospital, Romero and his father went to the

father's house; from there, Romero's mother drove him to the police station, where he gave a statement.

The State charged Skjold with first degree burglary with a deadly weapon enhancement, second degree assault with a deadly weapon enhancement, and unlawful imprisonment. A jury found Skjold guilty as charged. The court sentenced Skjold to an exceptional sentence of 229 months because, due to Skjold's high offender score, a standard range sentence would have allowed some crimes to go unpunished. Skjold appeals.

ANALYSIS

Sufficiency of the Charging Document – Unlawful Imprisonment

Skjold argues his conviction of unlawful imprisonment must be reversed on the ground that the count of the information charging him with that crime is deficient because it does not contain the four components of "restrain."

"A person is guilty of unlawful imprisonment if he or she knowingly restrains another person."[1] "Restrain" for purposes of the crime of unlawful imprisonment is defined as

> to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he or she is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him or her has not acquiesced.[2]

---

[1] RCW 9A.40.040(1)
[2] RCW 9A.40.010(6).

3

Skjold argues the information is deficient because it omits essential elements of the offense, namely that he knowingly restricted another's movements, without that person's consent, without legal authority, and in a manner that substantially interfered with that person's liberty. We rejected this argument in State v. Phuong, holding that the statutory definition of "restrain" is not an essential element of the crime of unlawful imprisonment and that failure to include the statutory definition in an information does not render the information deficient.[3] The charging document here is sufficient.

<u>Sufficiency of the Evidence – First Degree Burglary</u>

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.[4]

A person "enters or remains unlawfully" in or upon premises, for purposes of the first degree burglary statute, "when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."[5]

Skjold argues that the evidence is insufficient to convict him of first degree burglary because there is no evidence that he entered or remained unlawfully in Romero's apartment. We disagree.

> Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. We defer to

---

[3] 174 Wn. App. 494, 502, 299 P.3d 37 (2013).
[4] RCW 9A.52.020(1).
[5] RCW 9A.52.010(5).

the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[6]

Contrary to Skjold's argument, there is no evidence that Romero invited Skjold into his apartment. Rather, the evidence shows that when Romero heard the pounding on the door to his apartment, he opened it to see if it was a tenant having an emergency. When Romero opened the door, Skjold walked into the apartment, grabbed Romero by the throat, pushed him to the ground, and pulled a knife. According to Romero, very little time passed as these events unfolded and Romero "pretty much went right down on the ground." We find no evidence to support Skjold's contention that he was invited into Romero's apartment. The evidence, viewed in a light most favorable to the State, was sufficient to support Skjold's conviction of first degree burglary.

Statement of Additional Grounds

1.    Deadly Weapon Enhancement

In his statement of additional grounds (SAG), Skjold argues that the deadly weapon enhancements were not proper because the blade of the knife he wielded during the events was two and a half inches long. He argues that an enhancement is proper only if the blade is three inches long or longer. Skjold is incorrect. The statutes on which Skjold relies pertain to indeterminate sentences and crimes committed before July 1, 1984. These statutes are not relevant here. For purposes of a deadly weapon special verdict, a "deadly weapon" "is an implement or instrument which has the capacity to inflict death and from the

---

[6] State v. Cordero, 170 Wn. App. 351, 361, 284 P.3d 773 (2012) (internal quotation marks and citations omitted).

manner in which it is used, is likely to produce or may easily and readily produce death."[7] The knife Skjold pulled on Romero falls within this definition. The fact that the blade of the knife Skjold pulled on Romero was less than three inches in length does not change our conclusion. Knives with blades longer than three inches are included in the statutory list of instruments included in the term "deadly weapon," but that list is not exclusive.[8]

### 2.    Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's conduct was deficient; and (2) the defendant was prejudiced as a result.[9] Deficient performance is that which falls below an objective standard of reasonableness.[10] To demonstrate prejudice, a defendant must show that, but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[11] If the ineffective assistance claim fails on one prong, we need not address the other prong.[12]

We presume that counsel's representation of his or her client was reasonable and are highly deferential to counsel's decisions.[13] Strategic and tactical decisions are not grounds for error.[14]

---

[7] RCW 9.94A.825.
[8] See State v. Samaniego, 76 Wn. App. 76, 81, 882 P.2d 195 (1994).
[9] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[10] In re Det. of Moore, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009).
[11] In re Matter of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).
[12] State v. Staten, 60 Wn. App. 163, 171, 802 P.2d 1384 (1991).
[13] Strickland, 466 U.S. at 689-91.
[14] Strickland, 466 U.S. at 689-91.

### A.   Trial Counsel

Skjold argues his trial counsel was ineffective because he failed to object to the trial court's allowance of testimonial hearsay statements. The testimony to which Skjold refers is a police officer's testimony about statements Skjold's girlfriend made to the police when the police arrived at her and Skjold's apartment in response to a 911 call from neighbors reporting a domestic dispute and testimony from the neighbor about what he heard the girlfriend saying. The testimony was that the girlfriend was screaming loudly, "Please don't hurt me, he's trying to hurt me, he's trying to kill me" and that she was fighting with another person (who turned out to be Skjold) about money.

"The decision of when or whether to object is a classic example of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal."[15] Here, the statements of which Skjold complains were not central to the State's case. Further, it is likely that defense counsel did not object to avoid drawing unnecessary attention to the statement. This decision was a valid trial tactic. Even if, however, counsel's performance was deficient for failing to object, Skjold has not demonstrated that, but for the deficient performance, the outcome of the trial would have been different.

### B.   Appellate Counsel

In order to establish ineffective assistance of appellate counsel, the defendant must show that the legal issue appellate counsel failed to raise had

---

[15] State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

merit and that the defendant was actually prejudiced by the failure to raise or adequately raise the issue.[16] Skjold has failed to do so.

Skjold argues his appellate counsel was ineffective for not arranging for the transcription of the opening statements, voir dire, and the court's reading of the instructions to the jury. "A verbatim report of proceedings provided at public expense will not include the voir dire examination or opening statement unless so ordered by the trial court."[17] Further, Skjold has not shown, nor can we ascertain, any possibility of prejudice to Skjold by not having a transcript of the trial court's reading of the instructions to the jury.

Skjold has filed a motion entitled "Motion to Supplement Statement of Additional Grounds for Review," which is, in effect, a third SAG. This SAG, like the other two he filed, was filed well past the 30-day due date in RAP 10.10(d). We deny Skjold's motion. Further, the issues he raised in it are without merit. Skjold fails to show how he was prejudiced by appellate counsel's failure to raise an issue about the trial court's rulings on the motions in limine. And, Skjold cites no authority requiring appellate counsel to respond to the State's response to an appellant's pro se SAG.

3.    Denial of Motion for Mistrial

During Detective Cyrus O'Bryant's testimony, the following colloquy occurred:

Q.    And what did he say about the knife?

---

[16] In re Matter of Maxfield, 133 Wn.2d 332, 344, 945 P.2d 196 (1997).
[17] RAP 9.2(b).

8

A.  He said the knife wasn't his, and he was very specific. He said because he's under DOC super –

Q.  Wait.

[PROSECUTOR]:  Move to strike.

THE COURT:  Motion granted.

At the end of the day's testimony, out of the presence of the jury, defense counsel moved for a mistrial, arguing that the detective's statements ran afoul of ER 404(b). The trial court denied the motion for a mistrial. In his SAG, Skjold argues that the denial of his motion for a mistrial was error.

The trial court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried."[18] Factors to consider in determining whether a trial irregularity prejudiced a defendant's right to a fair trial are (1) the seriousness of the irregularity, (2) whether it involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard the irregularity.[19] We review the trial court's denial of a motion for mistrial for an abuse of discretion, finding such an abuse only if "'no reasonable judge would have reached the same conclusion.'"[20]

The trial court's denial of Skjold's motion for a mistrial was not an abuse of discretion and was not a conclusion that no reasonable judge would have reached. The detective did not complete the word "supervision" and the trial

---

[18] State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012).

[19] Emery, 174 Wn.2d at 765 (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

[20] Hopson, 113 Wn.2d at 284 (quoting Sofie v. Fibreboard Corp., 112 Wn.2d 636, 667, 771 P.2d 711 (1989)).

court immediately struck the comment from the record. We cannot say that the detective's truncated statement so prejudiced Skjold that nothing short of a new trial can ensure that he will be fairly tried.

4. Offender Score Calculation

Skjold argues that the trial court improperly calculated his offender score because the three counts with which he was charged constituted the same criminal conduct.

"Same criminal conduct" means "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."[21] All three factors must be present; "[i]f any element is missing, multiple offenses cannot be said to encompass the same criminal conduct."[22] We construe the definition of "same criminal conduct" narrowly so as to disallow most assertions of same criminal conduct. And, "we will reverse a sentencing court's determination of same criminal conduct only when there is a 'clear abuse of discretion or misapplication of the law.'"[23]

Here, all three crimes with which Skjold was charged involved the same victim. But, the unlawful imprisonment did not occur in the same place as the burglary and the assault. Further, the offenses do not share the same criminal intent. One factor in determining whether offenses share the same criminal

---

[21] RCW 9.94A.589(1)(a).
[22] State v. Wilson, 136 Wn. App. 596, 613, 150 P.3d 144 (2007) (quoting State v. Lessley, 118 Wn.2d 773, 778, 827 P.2d 996 (1992)).
[23] Wilson, 136 Wn. App. at 613 (quoting State v. Elliott, 114 Wn.2d 6, 17, 785 P.2d 440 (1990)).

intent is whether one crime furthered the other.[24] The burglary and assault did not further the unlawful imprisonment. The trial court did not abuse its discretion in not counting the three offenses as constituting the same criminal conduct.

5.    Cruel and Unusual Punishment

Skjold argues that his 229-month sentence constitutes cruel and unusual punishment. We review the length of a sentence for abuse of discretion.[25] We will find an abuse of discretion only if (1) the trial court relied on an impermissible reason, or (2) the sentence is so long that, in light of the record, it shocks the conscience of the reviewing court.[26] We do not review the length of a sentence in comparison with or in proportion to sentences in other cases.[27] A sentence shocks the conscience when it is one that no reasonable person would adopt.[28]

The trial court properly relied on the "free crimes" aggravator in imposing an exceptional sentence. Under the aggravator, the trial court may impose an exceptional sentence where the defendant "has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."[29] And, while lengthy, Skjold's sentence does not shock the conscience of this court. The trial court did not abuse its discretion in imposing the exceptional sentence.

---

[24] See State v. Burns, 114 Wn.2d 314, 318, 788 P.2d 531 (1990).

[25] State v. Ritchie, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995).

[26] Ritchie, 126 Wn.2d at 396 (quoting State v. Ross, 71 Wn. App. 556, 573, 861 P.2d 473 (1993)).

[27] Ritchie, 126 Wn.2d at 396.

[28] State v. Halsey, 140 Wn. App. 313, 324-25, 165 P.3d 409 (2007).

[29] RCW 9.94A.535(2)(c).

Affirmed.

_____

WE CONCUR:

_____          _____