# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 73163-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| LORENZO STEWART, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 25, 2016 |

LEACH, J. — Lorenzo Stewart appeals his conviction and sentence for first degree robbery while armed with a deadly weapon. He argues (1) the jury was improperly instructed on an uncharged alternative means of committing the crime, (2) the trial court's instructions relieved the State of its burden of proof, and (3) he received ineffective assistance of counsel for his attorney's failure to propose a jury instruction providing the definition of "armed." We affirm because the charging information adequately notified Stewart he would face charges based on being "armed" with a deadly weapon, there was no instructional error, and he fails to establish that but for counsel's alleged error the result would have been different at trial.

## FACTS

Joshua Miller, a Home Depot loss prevention officer, saw Lorenzo Stewart walk toward the store. Miller observed Stewart get a shopping cart and place a

number of bulky items in his cart. Stewart then pushed the cart to the return desk.

At the return register, Stewart told Chelsea Sneed, a cashier, that the items were from his employer and that he had returned additional merchandise the day before. After Sneed processed the return, she gave Stewart a store credit card with a balance of $290.05.

After watching this, Miller approached Stewart, identified himself, and asked him to come to the office. When Miller attempted to guide Stewart, he became upset and said, "Don't touch me, I can walk on my own." Stewart then veered toward the exit. Miller testified that he "tried to cut off his advance a little bit more with my body." But Miller explained that Stewart then pulled out a knife:

> At that point I will quote, he said, "I'm-a cut you, damn it." At [that] point I heard a flick at his right waist, and I threw my body backwards and tried to kick off of his shin, and as I did that, I saw a blade pass across my face.

Miller said the blade came within five to six inches of his face.

Stewart ran toward the exit. Miller followed. Miller called 911 and told the operator, "I'm an asset protection specialist at the Home Depot. I just had a shoplifter pull a knife on me." Miller said the knife was "the length of my hand folded, so probably about four and a half, five inches." Miller described Stewart to the operator and said that Stewart was traveling north on Aurora.

Edmonds Police Officer Kraig Strum responded to the 911 call. He heard another officer radio that he had found Stewart on Aurora. When Officer Strum

arrived, he saw the officer approach Stewart. Stewart said, "I don't know you, man," and fled.

The officers pursued Stewart on foot across Aurora Avenue and into an industrial complex. Eventually, Stewart fell. Officer Strum detained and frisked Stewart. He did not find a knife.

Edmonds K-9 Officer Jason Robinson arrived and began retracing Stewart's path with his dog. The dog led Officer Robinson back through the industrial area. There he found a knife in the middle of the parking lot. The dog indicated to Officer Robinson that the knife was associated with the scent he had been following. The knife was a switchblade-style knife, had a silver clip, and was approximately four inches long.

An officer drove Miller to the site of Stewart's arrest for identification. Edmunds Police Officer Jodi Sackville was with Stewart when Miller drove by. She testified that Stewart looked at the car and yelled, "[T]hat's the asshole that tried to stop me." King County Deputy Sheriff Josephine McNaughton, who was also present, asked Stewart why he pulled his knife. Stewart responded, "I carry a knife every day, it is my God given right to carry a knife. That man had no right to put his hands on me. If I would have slashed a knife at that man, you wouldn't have been able to talk to him."

The State charged Stewart by amended information with one count of robbery in the first degree. The information asserted a deadly weapon sentence

-3-

enhancement, alleging Stewart was "armed" with a knife at the time he committed the robbery. After a four-day trial, a jury convicted Stewart of the robbery charge and found by special verdict that he was armed with a deadly weapon when committing the crime. Stewart received a low-end standard-range sentence of 57 months for the robbery conviction and 24 months for the sentencing enhancement for a total sentence of 81 months.

Stewart appeals.

## ANALYSIS

### Uncharged Alternative Means

Stewart claims that the trial court improperly instructed the jury on an uncharged alternative means of committing first degree robbery. Specifically, he claims that the State charged him with "displaying" a deadly weapon, but the trial court instructed the jury that it could convict Stewart if it found he was "armed" with a deadly weapon.

The state and federal constitutions provide criminal defendants the right to be notified of the nature and cause of the accusation against them.[1]

> [W]here the statute provides that a crime may be committed in different ways or by different means, it is proper to charge in the information that the crime was committed in one of the ways or by one of the means specified in the statute, or in all the ways.[2]

---

[1] WASH. CONST. art. I, § 22; U.S. CONST. amend. IV; State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).

[2] State v. Severns, 13 Wn.2d 542, 548, 125 P.2d 659 (1942).

When the manner of committing a crime is an element of the offense, the defendant must be informed of this element in the information in order to prepare a proper defense.[3] We presume any instruction that allows a jury to convict on an uncharged alternative means prejudices the defendant, and on direct appeal the State must prove the error was harmless beyond a reasonable doubt to avoid reversal.[4]

RCW 9A.56.200 describes three alternative means of committing robbery in the first degree:

> (a) In the commission of a robbery or of immediate flight therefrom, he or she:
> (i) Is armed with a deadly weapon; or
> (ii) Displays what appears to be a firearm or other deadly weapon; or
> (iii) Inflicts bodily injury.

Here, the State's amended information charged Stewart with robbery in the first degree on the grounds that "in the commission of and in immediate flight therefrom, the defendant displayed what appeared to be a deadly weapon, to-wit: a knife." (Emphasis added.) The amended information also asserted a sentencing enhancement, alleging, "Lorenzo Stewart at said time of being armed with a deadly weapon, to-wit: a knife, under the authority of RCW 9.94A.825 and 9.94A.533(4)." (Emphasis added.)

---

[3] State v. Bray, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988).
[4] State v. Laramie, 141 Wn. App. 332, 342-43, 169 P.3d 859 (2007).

The court's instructions to the jury, however, stated that "[a] person commits the crime of robbery in the first degree when in the commission of a robbery he or she is <u>armed</u> with a deadly weapon." (Emphasis added.) Stewart argues this was error.

Stewart relies principally on <u>In re Personal Restraint of Brockie</u>.[5] There, as here, the information alleged that Brockie committed first degree robbery on the grounds that he "displayed what appeared to be a firearm or other deadly weapon."[6] The jury instructions, however, stated two alternative means of committing first degree robbery, namely, that "he or she is <u>armed</u> with a deadly weapon or <u>displays</u> what appears to be a firearm or other deadly weapon."[7] The court concluded this was error because "[n]othing in the charging information put Brockie on notice that he might be charged with the alternative means of first degree robbery while armed with a deadly weapon."[8] But using the different standard of review for personal restraint petitions, the court found that based on the record, any juror who found Brockie was armed with the weapon would have necessarily also concluded that he displayed it.[9] The court denied Brockie's petition.

---

[5] 178 Wn.2d 532, 538, 309 P.3d 498 (2013).
[6] <u>Brockie</u>, 178 Wn.2d at 535.
[7] <u>Brockie</u>, 178 Wn.2d at 535.
[8] <u>Brockie</u>, 178 Wn.2d at 538.
[9] <u>Brockie</u>, 178 Wn.2d at 539.

On direct appeal, the appellate court presumes that erroneous instructions given on behalf of the State prejudiced the defendant unless the record affirmatively shows the error was harmless.[10] Stewart claims the record does not show this because, unlike Brockie, the record here includes evidence that he was armed with but did not display the knife. For instance, he told police it was his "God given right to carry a knife." (Emphasis added.) He stated, "If I would have slashed a knife at that man, you wouldn't have been able to talk to him." Thus, in Stewart's view, it is possible the jury found he was armed with but did not display the knife. Assuming Stewart received no notice of the alternative means of being "armed" with a deadly weapon, this would be prejudicial error.

But a charging document need not use the exact words of the statute if it uses words conveying the same meaning that give reasonable notice to the defendant of the charge.[11] Here, the sentencing enhancement allegation for the robbery charge accused Stewart "of being armed with a deadly weapon" at the time he committed the robbery. Read together, the robbery charge and related sentencing enhancement allegation gave Stewart notice that he should expect to defend against the charges of "displaying" and being "armed" with a deadly weapon. Thus, the discrepancy between the charging information and the to-convict instruction did not prejudice him. It was not reversible error.

---

[10] Brockie, 178 Wn.2d at 538-39.
[11] In re Pers. Restraint of Benavidez, 160 Wn. App. 165, 170, 246 P.3d 842 (2011).

Stewart replies that the language in the sentencing enhancement is insufficient to provide notice because the jury only considers the enhancement if it finds him guilty of the predicate crime. We disagree. The question is whether Stewart received fair notice of the alternative means of being "armed" with a deadly weapon in the charging information, not the order in which the jury considers the crime and sentencing enhancement during deliberations.

Stewart's alternative means challenge fails.

Instructional Error

Next, Stewart argues that the sentencing enhancement instructions relieved the State of its burden to show the knife was a "deadly weapon." He did not object to the instructions below.

At the outset, the State claims that Stewart has failed to explain why he can raise this issue. In most cases, appellate courts decline to consider issues raised for the first time on appeal.[12] RAP 2.5(a)(3) provides an exception for claims of manifest error affecting a constitutional right.[13] Stewart fails to cite or discuss RAP 2.5 and thus arguably fails to demonstrate his entitlement to appellate review. But he identified the error as constitutional in his briefing and argues that it affected the outcome at trial. Even assuming he properly raises the issue, we find no error.

---

[12] RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

[13] Kirkman, 159 Wn.2d at 926.

"'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'"[14] Jury instructions must convey that the State bears the burden of proving each essential element of the offense beyond a reasonable doubt.[15] "It is reversible error if the instructions relieve the State of this burden."[16] Generally, the Sixth Amendment requires that the jury must find any fact increasing the penalty for a crime beyond a reasonable doubt.[17]

We review jury instructions de novo to ensure they accurately state the law, do not mislead the jury, and allow the parties to argue their theories of the case.[18]

RCW 9.94A.825 defines a deadly weapon for the purposes of a sentencing enhancement and states:

> For the purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: . . . any knife having a blade longer than three inches.

(Emphasis added.)

---

[14] State v. Sibert, 168 Wn.2d 306, 315, 230 P.3d 142 (2010) (quoting Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)).

[15] Sibert, 168 Wn.2d at 315.

[16] Sibert, 168 Wn.2d at 315.

[17] Blakely v. Washington, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[18] State v. Willis, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

Here, jury instruction 17 stated that a knife with a three-inch blade was a per se deadly weapon for the purposes of the sentencing enhancement:

> For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime.
> A knife having a blade longer than three inches is a deadly weapon.

For the first degree robbery charge, the court instructed the jury on the definition of a deadly weapon:

> Deadly weapon means any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

Stewart makes two claims. First, he contends jury instruction 17 failed to inform the jury that it had to find the knife blade was longer than three inches to answer "yes," the knife was a deadly weapon, on the special verdict form. Instead, he argues the jury instruction merely provided one example of a deadly weapon. Second, he argues the special verdict form contains no definition of deadly weapon. As a result, Stewart argues the jurors may have doubted the knife found by officers was the knife he used at Home Depot, yet still believed he used a knife not presented at trial. According to Stewart, this would allow the jury to convict him of using a deadly weapon even if it believed he used a knife blade that was less than three inches long.

Again, we disagree. Miller described the knife in his 911 call as the length of his "hand folded, so probably about four and a half, five inches." The knife

-10-

recovered after Stewart's arrest was located along the path he fled and was identified by a police dog as associated with the scent it was tracking. The four-inch knife was shown to the jury. No evidence of another knife was presented at trial. Thus, the overwhelming evidence established that Stewart brandished a four-inch knife at Miller. If the jury concluded Stewart had a knife at the time of the robbery, it necessarily had to conclude the knife was longer than three inches based on the trial evidence.

Any knife with a blade longer than three inches is a deadly weapon as a matter of law.[19] When the State alleges that the defendant used a per se deadly weapon, "[t]he jury should be instructed the implement is a deadly weapon as a matter of law."[20] The instruction does not, as Stewart contends, merely provide an example of a deadly weapon. We conclude the trial court did not err by instructing the jury that the knife was a per se deadly weapon.

Ineffective Assistance of Counsel

Stewart claims his attorney was ineffective for failing to request an instruction defining the term "armed" where there was evidence Stewart merely possessed the weapon. We disagree.

---

[19] RCW 9.94A.825.

[20] State v. Rahier, 37 Wn. App. 571, 576, 681 P.2d 1299 (1984). Rahier was decided based on RCW 9.95.040, a statute predating the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. But the case applies because the SRA's definition of deadly weapon for enhancement is unchanged. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.07 cmt. at 41 (3d ed. 2008) (citing State v. Sullivan, 47 Wn. App. 81, 733 P.2d 598 (1987)); State v. Samaniego, 76 Wn. App. 76, 79-80, 882 P.2d 195 (1994).

A defendant claiming ineffective assistance of counsel has the burden of showing that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defendant's case.[21] To show prejudice, Stewart must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22] The claim fails if the defendant does not establish either prong.[23] Counsel's performance is deficient if it falls below an objective standard of reasonableness.[24] Our review of counsel's performance is highly deferential, and we strongly presume reasonableness.[25]

To establish deficient performance, Stewart must show that (1) had counsel requested the instruction, the trial court likely would have given it and (2) defense counsel's failure to request the instruction was not a legitimate tactical decision.[26] Our Supreme Court has held that a person is "armed" as a matter of law if "a weapon is easily accessible and readily available for use, either for offensive or defensive purposes," and a nexus exists between the defendant, the

---

[21] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[22] Strickland, 466 U.S. at 694.
[23] Strickland, 466 U.S. at 700.
[24] State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995).
[25] McFarland, 127 Wn.2d at 335.
[26] State v. Powell, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009).

weapon, and the crime.[27] "Jury instructions need not, however, expressly contain 'nexus' language."[28]

Stewart argues that his attorney's failure to request a "nexus" instruction constitutes deficient performance. He argues he told officers it was his "'God given right to carry a knife' but that he did not pull it on Miller." Based on this assertion, Stewart argues "it is possible [the jury] answered 'yes' to the special verdict based solely on Stewart's admission to carrying a knife, which is legally insufficient to qualify as being armed."

His argument is unpersuasive. Stewart's statement did not encompass a denial of pulling or using a knife. He claimed during his arrest that it was his "God given right to carry a knife," then stated, "That man had no right to put his hands on me. If I would have slashed a knife at that man, you wouldn't have been able to talk to him."

Furthermore, overwhelming evidence supports the conclusion that Stewart did not merely possess the knife but used it during the robbery. Miller's unrebutted testimony was that he heard a "flick," threw himself back, and saw a blade pass within five or six inches of his face. After giving chase, officers recovered the knife on the same path Stewart used to flee. The jury also heard

---

[27] State v. Valdobinos, 122 Wn.2d 270, 282, 858 P.2d 199 (1993); State v. Brown, 162 Wn.2d 422, 431, 173 P.3d 245 (2007).
[28] State v. Barnes, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005).

Stewart's confrontational statement about Miller where he said, "[T]hat's the asshole that tried to stop me."

A defendant is entitled to a jury instruction if substantial evidence in the record supports his theory.[29] We do not find substantial evidence in the record to support the nexus instruction. To the contrary, the overwhelming evidence demonstrated that Stewart did not merely possess a knife but used it in the commission of the crime.

For the same reason, Stewart does not show a reasonable probability that but for his attorney's failure to request the instruction the result at trial would have been different. Indeed, the trial evidence clearly showed Stewart actually used the knife during the robbery. This is sufficient to establish that the knife was easily accessible and readily available for either offensive or defensive purposes and was used in connection with the robbery.

Stewart's claim for ineffective assistance of counsel fails.

We affirm.

Leach, J.

WE CONCUR:

Trickey, ACJ

Spearman, J.

---

[29] Powell, 150 Wn. App. at 154.