Filed 9/16/14  P. v. Hachem CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B250009 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. KA096499-02) |
| MARK ANTOINE HACHEM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Mark E. Weber and Garett Gorlistky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Mark Antoine Hachem of aggravated assault and witness intimidation and found true the special allegation Hachem had personally inflicted great bodily injury upon the victim, Jason Balibrea. On appeal Hachem contends the evidence is insufficient to support the great bodily injury enhancement and the trial court abused its discretion by failing to consider granting him probation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

An information charged Hachem with assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1), count 1)[1] with a special allegation he had personally inflicted great bodily injury on the victim within the meaning of section 12022.7, subdivision (a). The information also charged Hachem with witness intimidation (§ 137, subd. (b), count 3).[2]

2. *Summary of the Trial Evidence*

Balibrea testified that late on the night of December 28, 2011 he had walked to the intersection of Willow Avenue and Gladstone Street in Glendora to meet his friend Jesse Morales, who was arriving by car. As Balibrea was crossing Gladstone Street, he passed in front of Hachem's Toyota, stopped at the traffic light. Gabriel Ojeda[3] emerged from the car and punched Balibrea in the jaw with brass knuckles.[4] Balibrea stumbled backward and fell to the curb. Ojeda started kicking Balibrea. Hachem joined in soon thereafter, and the two men kicked Balibrea all over his body. Balibrea testified they did

---

[1]    Statutory references are to the Penal Code.

[2]    The same information charged Gabriel Ojeda with aggravated assault (count 1) with special allegations he had personally inflicted great bodily injury and had personally used a deadly and dangerous weapon (brass knuckles) on the victim. The information also charged Ojeda separately with assault with a deadly weapon (brass knuckles) (count 2) with a special allegation he had personally inflicted great bodily injury on the victim.

[3]    Hachem and Ojeda were tried together before separate juries.

[4]    There was conflicting evidence whether prior to this encounter Hachem and Ojeda had been pursuing Balibrea and Morales on the freeway after someone in Morales's car had thrown an object at Hachem's car.

2

not kick his head although one of the assailants may have punched him in the face while he was on the pavement.

Morales arrived at the intersection in time to see Ojeda strike Balibrea and Balibrea collapse in the street. Morales testified, after Balibrea fell to the pavement, Ojeda continued to hit him. Hachem got out of his car and joined Ojeda in beating Balibrea. Morales drove his car toward Hachem and Ojeda, hoping to scare them away. When they ignored him and continued to punch and kick Balibrea, Morales retrieved a baseball bat from his car and approached the men. Hachem saw Morales and ran back to his car. Morales smashed the windshield with the bat, prompting Ojeda also to return to the car and drive away. Morales then helped Balibrea into his car and drove him to the home of Balibrea's parents.

Balibrea was later taken to the hospital where he was diagnosed with a broken jaw; he underwent surgery to realign his jaw, which was then wired shut for several months. Balibrea also had several teeth dislodged during the attack. According to medical records admitted into evidence, Balibrea suffered fractures to both sides of his jaw (left and right mandibular fractures).[5]

Rachel Agron testified on the night of December 28, 2011 she was in a car stopped behind a Toyota at the intersection of Willow Avenue and Gladstone Street. A passenger got out of the Toyota, caught up with a pedestrian crossing in front of the car and struck him. A second man joined in beating the pedestrian. Both assailants were hitting the victim while he lay on the ground.

Glendora Police Officer Adam Pettinger testified Morales told him in an interview on the night of the assault that Hachem had kicked Balibrea in the head during the attack. Pettinger testified he also interviewed Agron, who said, once the passenger from the Toyota had knocked the pedestrian to the pavement, another man appeared and both men began kicking and punching the pedestrian.

_____

[5]     No expert medical testimony was introduced into evidence.

3

During police interviews on the day after the assault, Hachem denied he had been with Ojeda the night before and claimed he had not hit or kicked anyone. Hachem did not testify at trial.

### 3. *Verdict and Sentencing*

The jury found Hachem guilty of aggravated assault and witness intimidation. The jury also found true the section 12022.7, subdivision (a), great bodily injury enhancement allegation.[6] The trial court denied Hachem's motion for a new trial on the ground of insufficient evidence to support the great bodily injury enhancement.

Prior to sentencing the trial court was provided the People's sentencing memorandum, the probation officer's report, the defense sentencing memorandum and other materials.[7] According to these documents, Hachem was presumptively ineligible for probation pursuant to section 1203, subdivision (e)(3), apparently because of the great bodily injury enhancement. In his sentencing memorandum and argument to the court, defense counsel maintained the statutory presumption against probation in this case was overcome by unusual circumstances and asked that Hachem be granted probation or, alternatively, be sentenced to the lower term. The prosecutor argued Hachem was ineligible for probation and insisted the circumstances urged by defense counsel should be considered solely as factors in mitigation of his sentence. However, the prosecutor then disputed those circumstances and argued the middle term should be imposed.

Following argument by counsel, the trial court stated Hachem's description of the assault to others revealed "a cold blooded disregard for anything except power and respect" and conveyed gang overtones.[8] The court acknowledged Hachem's immaturity

---

[6] Ojeda was convicted of aggravated assault and simple assault as a lesser included offense of assault with a deadly weapon and found not guilty of witness intimidation. He has filed his own appeal, arguing his convictions should be reversed for juror misconduct. (*People v. Ojeda*, B246956.)

[7] These materials included a psychological examination and statements from Balibrea, Hachem and Hachem's family.

[8] The trial court was referring to text messages admitted into evidence, which Hachem had sent to third parties describing the attack, but not his role in it.

4

and poor decisionmaking skills, limited criminal record and educational progress while incarcerated as mitigating factors. The court emphasized they did not, however, outweigh the aggravating factors of the circumstances of the violent group beating. The court sentenced Hachem to an aggregate state prison term of six years: the three-year middle term for aggravated assault (count 1) plus a three-year term for the great bodily injury enhancement and stayed sentencing for witness intimidation (count 3) under section 654.[9] Hachem was also ordered to pay restitution to Balibrea.

## DISCUSSION

1. *Substantial Evidence Supports the Great Bodily Injury Enhancement*

    a. *Standard of review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the

---

[9]    Although the court did not expressly deny Hachem probation, the minute order following the sentencing proceedings states, "Due to the fact that the offense is a violent felony and that the defendant's involvement is significant, defendant's request for probationary sentence is heard and denied." The oral pronouncement of judgment controls when there is a discrepancy between it and the minute order. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; see *People v. Mesa* (1975) 14 Cal.3d 466, 471 ["'[r]endition of judgment is an oral pronouncement'"].) A minute order should accurately record what actually occurred at the hearing; the clerk is prohibited from supplementing the judgment the court actually pronounced by adding a provision to the minute order. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388.)

facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

b. *Substantial evidence supports the jury's finding Hachem personally inflicted great bodily injury*

Section 12022.7, subdivision (a), provides a three-year enhancement for "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony . . . ." A defendant "need not be the sole or definite cause of a specific injury" to support a finding he or she personally inflicted great bodily injury. (*People v. Modiri* (2006) 39 Cal.4th 481, 486.) In the context of a group beating, personal infliction of great bodily injury may be found "if defendant personally applied force to the victim, and such force was sufficient to produce grievous bodily harm either alone or in concert with others." (*Id.* at p. 497.) In group beating cases "the evidence is often conflicting or unclear as to which assailant caused particular injuries in whole or part. Thus, . . . those who participate directly and substantially in a group beating should not be immune from a personal-infliction finding for the sole reason that the resulting confusion prevents a showing or determination of this kind."[10] (*Id.* at pp. 496-497.) Nonetheless, a defendant is not responsible for

[10] The jury was instructed with CALJIC No. 17.20: "It is also alleged in Counts 1 and 2 that in the commission of those felonies, the defendants personally inflicted great bodily injury on witness Balibrea, not an accomplice to the crime. If you find the defendants guilty of counts 1 or 2, felonies, you must determine whether the defendants personally inflicted great bodily injury on some person, Mr. Balibrea . . . not an accomplice to the crime, in the commission or attempted commission of that crime, counts 1 and 2. 'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury. When a person participates in a group beating and it is not possible to determine which assailant inflicted a particular injury, he may be found to have personally inflicted great bodily injury upon the victim if (1) the application of unlawful

6

inflicting great bodily injury if he or she merely assisted another to produce injury and did not personally and directly inflict the injury. The defendant must commit acts that "contribute substantially to the victim's injured state." (*Id.* at p. 494.) Personal infliction of great bodily injury has not occurred when an aider and abettor did not actually strike or injure the victim. (*Id.* at p. 495.)

Hachem maintains the jury's finding he personally inflicted great bodily injury on Balibrea was not supported by sufficient evidence under the group beating theory because Balibera's broken jaw resulted solely from the initial punch delivered by Ojeda. Hachem's argument ignores substantial portions of the evidence. The beating Balibrea suffered at the hands of Ojeda and Hachem was vicious. Although Ojeda commenced the attack by striking Balibrea's jaw, Hachem joined Ojeda in kicking and pummeling Balibrea after he fell to the pavement. Officer Pettinger testified Morales told him Hachem kicked Balibrea in the head during the attack. This testimony, which the jury was entitled to believe, was sufficient to support the jury's finding. (See *People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["the testimony of a single witness is sufficient for the proof of any fact"]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) Moreover, although Balibrea testified he was not kicked in the head, he acknowledged he may have been struck again in the face while lying on the pavement. In addition, Balibrea's medical records revealed multiple fractures to his jaw on both sides of his face, a condition consistent with having been struck multiple times by more than one assailant during the attack. The jury

---

physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim; or (2) at the time the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim. The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true."

7

reasonably found Hachem's blows either caused or contributed to the serious damage to Balibrea's jaw.

2. *The Trial Court Did Not Abuse Its Discretion By Failing To Consider Probation*

Hachem contends the trial court abused its discretion by failing to consider a grant of probation as a sentencing option, erroneously believing Hachem was presumptively ineligible for probation under section 1203, subdivision (e)(3). That statute provides, "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . [¶] . . . [¶] [a]ny person who willfully inflicted great bodily injury or torture in the perpetration of the crime of which he or she has been convicted." (See also Cal. Rules of Court, rules 4.413, 4.414.)

Relying on *People v. Lewis* (2004) 120 Cal.App.4th 837, 853 (*Lewis*), which held "willfully" as used in section 1203, subdivision (e)(3), requires that a defendant intended to cause great bodily injury, not merely that the crime result in such injury, Hachem argues the prosecutor, probation officer and defense counsel all mistakenly assumed he was presumptively ineligible for probation notwithstanding the absence of a finding he had "willfully" inflicted great bodily injury; and the trial court apparently agreed because it neither addressed the issue nor made a factual finding sufficient to justify a mandatory denial of probation absent unusual circumstances.[11]

In *Lewis* the prosecutor, the probation officer and the defense counsel agreed that the defendant, having inflicted great bodily injury, was ineligible for probation under section 1203, subdivision (e)(3). At sentencing the trial court observed, although the defendant was a good candidate for probation, there were no unusual circumstances to justify granting probation under the statute. (*Lewis, supra,* 120 Cal.App.4th at p. 851.) The trial court was not asked to make a finding on the issue of intent, and it did not state on the record the defendant intended to inflict great bodily injury on his victim. (*Id.* at pp. 852, 854.) The appellate court remanded the matter for a new probation and

---

[11] The court in *Lewis* also held the trial court, rather than the jury, may determine that factual issue. (*Lewis, supra,* 120 Cal.App.4th at p. 854.)

sentencing hearing to allow the trial court to make a finding as to whether the defendant was presumptively ineligible for probation under section 1203, subdivision (e)(3). (*Lewis,* at p. 854.)

The People contend Hachem forfeited this argument by agreeing (through counsel) rather than objecting to the assertion he was presumptively ineligible for probation. Hachem insists his counsel preserved the issue by asking the court to sentence him to probation albeit based on the presence of unusual circumstances that outweighed his presumptive ineligibility for probation and, to the extent his counsel failed to properly raise the issue in the trial court, he was provided ineffective assistance of counsel.

Whether viewed as based on an implied finding of intent in light of the overwhelming evidence of the vicious nature of the attack on Balibrea (see *People v. Fisher* (1965) 234 Cal.App.2d 189, 192-193 [implied finding defendant ineligible for probation because he had used a deadly weapon notwithstanding jury finding only that he was armed with a deadly weapon]) or as harmless error if an express finding was required, on this record the denial of probation to Hachem does not require a new sentencing hearing. The trial court had extensive evidence before it regarding Hachem's youth, psychological condition, limited criminal record, recent educational progress and other mitigating factors. Despite that evidence the court was not persuaded to impose the lower term sentence. Instead, the court selected the middle term, emphasizing its grave concerns about Hachem's callousness towards his victim and the violent nature of the crime, which suggested gang behavior. There is no reasonable possibility the court would have found Hachem suitable for probation had the *Lewis* decision been discussed or the "willfully" language of section 1203, subdivision (e)(3), been emphasized.

9

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.


We concur:



WOODS, J.



SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.