IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73010-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ERIKA ANNE SOERENSEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 2, 2016 |

SCHINDLER, J. — A jury convicted Erika Anne Soerensen of assault in the second

degree with a deadly weapon in violation of RCW 9A.36.021(1)(c). Soerensen argues

the State did not prove beyond a reasonable doubt (1) she intentionally hit bicycle-rider

Jacob Vanderplas with her car, (2) she intentionally created the fear of bodily harm in

Vanderplas, or (3) her car was used as a deadly weapon. Because substantial

evidence supports the conviction, we affirm but remand to correct a scrivener's error in

the judgment and sentence.

## FACTS

Erika Anne Soerensen and Jacob Vanderplas lived in West Seattle. At

approximately 8:00 a.m. on Monday, July 8, 2013, Soerensen was driving her black

Nissan Sentra from her residence in West Seattle to her job in downtown Seattle.

Soerensen was running late and afraid she would be "written up" for being late to work.

To avoid the heavy traffic on her usual route northbound on Delridge Way Southwest, she turned onto a side street and headed northbound on 26th Avenue Southwest. 26th Avenue Southwest is a designated bicycle route with a posted speed limit of 20 m.p.h.

Vanderplas was riding his bicycle on the way to work traveling northbound on 26th Avenue Southwest on the right side of the roadway. Vanderplas noticed a dark-colored Nissan quickly approaching him from behind. At the intersection of 26th Avenue Southwest and Southwest Genesee Street, Vanderplas stopped, turned around to face the Nissan, and pointed to the 20 m.p.h. speed limit sign.

After crossing Southwest Genesee Street, Vanderplas pulled to the side of the road to allow a southbound car to pass him and then continued northbound. When he reached the next intersection, Vanderplas looked back and saw the Nissan was "still navigating how to get past the oncoming vehicle." After the southbound car backed up to allow Soerensen to pass, Soerensen "took off at a very high, accelerated speed."

As Vanderplas neared the intersection of 26th Avenue Southwest and Southwest Andover Street, he heard the Nissan approach him from behind with the driver "laying on the horn." While riding in a straight line on the right side of the roadway, Vanderplas turned around and yelled, "What the fuck are you doing?" When he stopped at the intersection of 26th Avenue Southwest and Southwest Andover Street, the driver of the Nissan pulled up beside him and screamed at him.

Vanderplas could not understand what the driver was saying because the windows of the car were rolled up. Vanderplas turned right onto Southwest Andover Street to ride in the designated bicycle lane. Vanderplas said the tires on the Nissan squealed as the driver made the right turn onto Southwest Andover Street, drove up

2

behind him, and began to pass him on the left. Vanderplas said as the Nissan passed him, the driver suddenly moved "[v]ery quickly" into the bicycle lane. Vanderplas said the front of the Nissan "was entirely in the bike lane . . . blocking the entire bike lane." Vanderplas estimated he was traveling between 5 and 10 m.p.h. when the Nissan turned into the bicycle lane. Vanderplas tried to brake but "didn't have enough time." The Nissan hit the left handlebar of his bicycle, and his left hand "took the brunt of the force of the strike." The impact knocked Vanderplas "onto the sidewalk." The Nissan drove away without stopping. Vanderplas memorized the Nissan's license plate number.

Seattle Police Department Detective Alan Cruise spoke to Soerensen a few days later. When Detective Cruise told Soerensen he was investigating a collision between a car and a bicyclist on Southwest Andover Street the previous Monday morning, Soerensen "almost immediately said, No, I wasn't involved in any accident with a bicycle." Soerensen told Detective Cruise that "she wasn't there, she was working at the time." Nonetheless, Soerensen later acknowledged she was "present at the date, time and location in question." Soerensen told Detective Cruise she had a disagreement with a bicyclist the morning of July 8 and honked her horn at the bicyclist because he was "riding in the middle of the road going 5 miles an hour." Soerensen told Detective Cruise she passed the bicyclist while driving to work. When Detective Cruise asked her if it was possible that the bicyclist touched her car, Soerensen said, "[N]o, there was absolutely no contact between her and the cyclist." Approximately two weeks later, Soerensen sent a written statement to Detective Cruise describing the incident in greater detail.

The State charged Soerensen with assault in the second degree with a deadly weapon in violation of RCW 9A.36.021(1)(c). The information alleged, in pertinent part:

ERIKA ANNE SOERENSEN in King County, Washington, on or about July 8, 2013, did intentionally assault Jacob T. Vanderplas with a deadly weapon, to-wit: a vehicle.

The State called a number of witnesses during the three-day jury trial including Vanderplas, Detective Cruise, and a number of eyewitnesses.

Bicyclist Eric Rajski testified that while he was stopped on his bicycle at the intersection of Southwest Genesee Street and 26th Avenue Southwest, he saw Vanderplas riding a bicycle northbound on 26th Avenue Southwest with a Nissan "tailing . . . very closely." Rajski testified he heard "very loud — crazy loud" music coming from the car and saw "all the windows were rolled up." Rajski remembered the music "because it is a band that I liked that she was listening to — New Order." Rajski testified he followed Vanderplas and the Nissan northbound on 26th Avenue Southwest. After Vanderplas and the Nissan passed a car traveling southbound, the Nissan "took off at a very high, accelerated speed, racing her engine." Rajski testified the driver of the Nissan "held her horn down and didn't let off of it, and it wasn't like a beep, beep or a friendly toot, it was — the horn was on for — nonstop . . . [t]he entire two blocks about up to . . . Andover." After the Nissan hit Vanderplas, Rajski followed the car and saw the driver was "a younger woman" with "dark hair that was about shoulder length." After Rajski memorized the license plate number, he returned to help Vanderplas.

Rebecca Moxley was driving westbound on Southwest Andover Street at the time of the incident and had "a direct view of what was going on." Moxley testified she was close to the intersection with 26th Avenue Southwest when she saw the Nissan

4

turn in "a quick motion" into the bicycle lane and hit Vanderplas. Moxley said the driver then "corrected her drive" and drove off. Moxley followed the Nissan and called 911. Moxley testified she described what happened to the 911 operator and gave the operator a description of the driver of the Nissan and the license plate number.

Brent Spencer was driving on Southwest Andover Street toward the intersection with 26th Avenue Southwest when he saw Vanderplas turn right onto Southwest Andover Street. Spencer saw the Nissan turn the corner "a second later" and watched in his driver's side mirror as the driver of the Nissan hit Vanderplas.

Q. . . . At that point were you still able to see the car and the cycle?
A. I was. Because I noticed them, something out of the ordinary, something — there was something unusual about it, I was, as I passed them, I continued to just watch him through my left window mirror.

. . . .
Q. . . . So after they turned, through your rear side mirror, did you see anything else?
A. Yes, as I was just watching them, first I saw the car turn into the right lane, or turn into — onto Andover Street, and then after that, the car turned into the biker and hit the biker, and then drove off.
Q. Okay.
    Could you describe — you are saying turned into the bike lane?
    Can you describe how that turn — how that turn took place?
A. Sure.
    So the car just turned onto Andover Street from 26th Ave. as any car would, and then once they were on Andover Street, they, as they passed by the biker, or the cyclist, they hit him and knocked him over.
Q. Okay.

. . . .
A. It was definite — it was a definite two motions, basically.
Q. When you say two motions, what were the two motions that you saw?
A. It was not fluid. There was — it was one turn onto the Andover Street and then a separate turn to hit the biker.

Detective Cruise testified he used the license plate number to identify Soerensen as the owner of the black 2002 Nissan sedan. Detective Cruise described the interview with Soerensen. Detective Cruise testified the 2002 Nissan sedan weighed a little over 2,500 pounds.

Soerensen testified she saw Vanderplas riding behind her and waved for him to pass her because she "didn't want . . . to get stuck in the roundabout together." Soerensen testified there was no possibility she was going faster than 20 m.p.h. Soerensen said she was confused when Vanderplas pointed to the speed limit sign because she "didn't understand why he was pointing at the speed limit sign when I was going the speed limit." Soerensen denied listening to loud music and said she listens to National Public Radio in the morning.

According to Soerensen, after she and Vanderplas passed Southwest Genesee Street, Vanderplas was riding slowly and weaving back and forth across the street. Soerensen testified she honked the horn of her car because she thought he might be drunk. Soerensen testified that while they waited at the Southwest Andover Street intersection, they "got into a verbal exchange with each other." Soerensen testified she "saw a mouth and screaming . . . . I could tell he said, What the fuck are you doing?" Soerensen testified she responded by saying, "What are you doing? You are in front of me veering back side-to-side. What is your problem? Are you on drugs?" Soerensen testified she told Vanderplas to "[h]ave a nice day" before driving off. In response to whether she tried to scare Vanderplas with her car, Soerensen testified, "No. I just wanted to get away from him. I don't know if when we turned I was too close? I don't know what happened, but I just wanted to get away from the situation and then go to

6

work." Soerensen testified she would "never, ever, ever, ever want to physically hit somebody."

The jury found Soerensen guilty as charged of second degree assault.[1]

ANALYSIS

Soerensen contends the State did not prove beyond a reasonable doubt she committed assault in the second degree with a deadly weapon.[2]

The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Soerensen contends the State did not prove beyond a reasonable doubt she (1) intentionally struck Vanderplas with her car or (2) intended to injure or create a fear of bodily harm in Vanderplas.

Under RCW 9A.36.021(1)(c), a person is guilty of assault in the second degree with a deadly weapon if "he or she . . . [a]ssaults another with a deadly weapon." The

---

[1] The court imposed an exceptional sentence downward of 240 hours of community service.

[2] The State filed a cross appeal. However, the State abandoned its challenge in its brief to this court.

7

criminal code does not define "assault." State v. Elmi, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

> Three definitions of assault are recognized in Washington: (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm.

Elmi, 166 Wn.2d at 215.

> The court instructed the jury on the definition of "assault" as follows:

> An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.
> An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented.
> An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.[3]

The State argued Soerensen committed a battery or intended to place Vanderplas in fear of injury. To prove assault by actual battery, "the State need show only the intention to touch or strike, not the intent to injure." State v. Baker, 136 Wn. App. 878, 883-84, 151 P.3d 237 (2007) (citing State v. Hall, 104 Wn. App. 56, 62, 14 P.3d 884 (2000)).

Viewing the evidence in the light most favorable to the State, a rational jury could find Soerensen intentionally struck Vanderplas with her car. Soerensen was late for work and in a hurry. To avoid traffic on Delridge Way Southwest, she took a detour onto an unfamiliar and narrow side street with a speed limit of 20 m.p.h. Soerensen became angry when Vanderplas pointed at the speed limit sign in front of her. After the

---

[3] Emphasis added.

8

oncoming car backed up to let her pass, Soerensen "floored it" to catch up to Vanderplas while continually holding down the horn of her car. Soerensen and Vanderplas yelled at one another at the intersection before Vanderplas turned on Southwest Andover Street. Soerensen followed Vanderplas with her tires squealing. After she nearly passed him, Soerensen turned her car sharply into the bicycle lane. Moxley and Spencer testified Soerensen deliberately turned into the bicycle lane. Viewing the evidence in the light most favorable to the State, a reasonable jury could find Soerensen committed a battery and intentionally struck Vanderplas with her car.

Viewing the evidence in the light most favorable to the State, a rational jury could also conclude Soerensen had the intent to create a fear of bodily harm in Vanderplas. After passing the southbound car, Soerensen "floored it" to catch up to Vanderplas and continually honked her horn behind him. While Soerensen denied continually honking the horn of her car, we defer to the jury in weighing conflicting evidence. Thomas, 150 Wn.2d at 874-75.

As Soerensen quickly turned onto Southwest Andover Street, Vanderplas heard the tires of her car squeal. As Soerensen began to pass Vanderplas, she deliberately turned her 2,500-pound vehicle into the bicycle lane, forcing Vanderplas to brake suddenly.

Soerensen also contends the State did not prove beyond a reasonable doubt she used her Nissan as a "deadly weapon."

RCW 9A.04.110(6) defines "deadly weapon" as follows:

[A]ny explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used,

attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.[4]

RCW 9A.04.110(4)(b) defines "substantial bodily harm" as follows:

[B]odily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part.

Whether a weapon is deadly under the circumstances in which it is used is a question of fact decided by the jury. State v. Carlson, 65 Wn. App. 153, 159-60, 828 P.2d 30 (1992) (citing State v. Sorenson, 6 Wn. App. 269, 273, 492 P.2d 233 (1972)). "Circumstances" include " 'the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted.' " State v. Schilling, 77 Wn. App. 166, 171, 889 P.2d 948 (1995) (quoting Sorenson, 6 Wn. App. at 273).

Soerensen does not dispute a vehicle is readily capable of causing substantial bodily injury in some circumstances. Soerensen contends the circumstances of this case establish she did not use her vehicle as a deadly weapon.

We disagree. Witness Rajski testified Soerensen was "tailing" Vanderplas with her car, "racing her engine," and continuously honking the horn. Vanderplas and witnesses Moxley and Spencer testified Soerensen suddenly turned into the bicycle lane and the Nissan deliberately hit Vanderplas and knocked him onto the sidewalk. Viewing the evidence in the light most favorable to the State, Soerensen used her vehicle as a "deadly weapon."

---

[4] Emphasis added.

The State concedes the judgment and sentence incorrectly states Soerensen was convicted of assault under both RCW 9A.36.021(1)(a) and (c). We accept the State's concession and remand to the trial court to correct the scrivener's error.

We affirm Soerensen's conviction of assault in the second degree with a deadly weapon but remand to correct a scrivener's error in the judgment and sentence.

WE CONCUR: