[Crim. No. 3578. Third Dist. May 3, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE CALVIN FISHER et al., Defendants and Appellants.

Wallace J. Coats and Gus Skarakis, under appointment by the District Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Anthony DaVigo, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, Acting P. J.—Defendants were charged by information with armed robbery, being at the time armed with a dangerous weapon, a tire iron. The evidence showed that defendant Virginia Shelton first struck the victim across the face with a tire iron, knocking him to the ground, and that defendant Lawrence Fisher repeatedly struck the victim on the head with another tire iron. The jury found defendants guilty as charged.

Following the verdict both defendants were before the court with their counsel, a deputy public defender. The following colloquy occurred: "MR. SALAMY [defense counsel] : Your Honor, the defendant Fisher asked me to have a full presentence report. THE COURT: Does he want to refer it to the Probation Office? I am— I assure you he is not going to get probation. It was a bad robbery, it was a cruel thing to do, and then bring that phony alibi to me, something I can't go for. MR. SALAMY: He says that he will take sentence now, your Honor. THE COURT: Do you want your sentence now? DEFENDANT FISHER: Yes, sir."

Defendants contend that they were eligible for probation and that the trial court erred in refusing to consider probation. Additionally, Fisher charges that the trial court's remarks intimidated him and he would not have submitted to the pronouncement of sentence were it not for the coercive effects of the judge's remarks. The latter contention is met by the observation that Fisher is not being charged or fastened with any waiver, express or implied, of whatever rights he possessed.

After a verdict or finding of guilty in a felony case the trial court cannot summarily deny probation to an eligible defendant; to the contrary, the court is required to order a report by the probation officer and to consider the question of probation. (Pen. Code, § 1203, par. 1; 2 Witkin, Cal. Crimes (1963) p. 1001.) If defendants were actually ineligible for probation, the summary refusal to order a presentence investigation was not error.

Defendants' eligibility for probation is covered by the third and fourth paragraphs of Penal Code, section 1203.[1] There

---

[1]The third and fourth paragraphs of Penal Code section 1203 provide as follows:

"The Legislature hereby expresses the policy of the people of the State of California to be that, except in unusual cases where the interest of justice demands a departure from the declared policy, no judge shall grant probation to any person who shall have been convicted of robbery, burglary or arson, and who at the time of the perpetration of said crime

is a seeming conflict between these two paragraphs, which has been explored and discussed in a number of reported decisions. It is defendants' theory that they come within the category of persons described in the third paragraph, to whom probation is generally denied as a matter of policy but who may receive probation "in unusual cases where the interest of justice demands a departure from the declared policy . . . ."

or any of them or at the time of his arrest was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same), nor to a defendant who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted, nor to one who in the perpetration of the crime of which he was convicted wilfully inflicted great bodily injury or torture, nor to any such person unless the court shall be satisfied that he has never been previously convicted of a felony in this State nor previously convicted in any other place of a public offense which would have been a felony if committed in this State.

"Probation shall not be granted to any person who shall have been convicted of burglary with explosives, rape with force or violence, murder, assault with intent to commit murder, attempt to commit murder, train wrecking, kidnaping, escape from a state prison, conspiracy to commit any one or more of the aforementioned felonies, and who at the time of the perpetration of said crime or any of them or at the time of his arrest was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same), nor to a defendant who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted, nor to one who in the perpetration of the crime of which he was convicted wilfully inflicted great bodily injury or torture, nor to any defendant unless the court shall be satisfied that he has not been twice previously convicted of felony in this State nor twice previously convicted in any other place or places of public offenses which would have been felonies if committed in this State; nor to any defendant convicted of the crime of burglary with explosives, rape with force or violence, murder, attempt to commit murder, assault with intent to commit murder, train wrecking, extortion, kidnaping, escape from a state prison, violation of Sections 286, 288 or 288a of this code, or conspiracy to commit any one or more of the aforesaid felonies, unless the court shall be satisfied that he has never been previously convicted of a felony in this State nor previously convicted in any other place of a public offense which would have been a felony if committed in this State; nor to any defendant unless the court shall be satisfied that he has never been previously convicted of a felony in this State nor convicted in any other place of a public offense which would have been a felony if committed in this State and at the time of the perpetration of said previous offense or at the time of his arrest for said previous offense he was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same) or he personally used or attempted to use a deadly weapon upon a human being in connection with the perpetration of said previous offense or in the perpetration of said previous offense he wilfully inflicted great bodily injury or torture; nor to any public official or peace officer of the State, county, city, city and county, or other political subdivision who, in the discharge of the duties of his public office or employment, accepted or gave or offered to accept or give any bribe or embezzled public money or was guilty of extortion."

Each of these paragraphs of section 1203 enumerates certain crimes and denies probation to persons who commit such crimes while armed with a deadly weapon; additionally, both paragraphs deny probation to any defendant *who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted.* A few decided cases have construed the italicized language to refer only to the particular crimes listed in the earlier portion of the particular paragraph, the italicized language having no independent significance. (See, for example, *People* v. *Superior Court,* 199 Cal.App.2d 303, 308 [18 Cal.Rptr. 557].) If that interpretation were followed, then defendants, having been found guilty of robbery, one of the crimes specified in paragraph 3, would be in the class of persons to whom probation may be granted "in unusual cases." That interpretation, however, was rejected in *People* v. *Alotis,* 60 Cal.2d 698, 704-705 [36 Cal.Rptr. 443, 388 P.2d 675], which states: "This apparent conflict was reconciled in the case of *People* v. *Southack,* 39 Cal.2d 578, 591 [248 P.2d 12], in which it was held that the italicized portions of paragraphs (3) and (4) controlled the balance of those paragraphs, and that, therefore, probation was to be denied to a defendant convicted of any crime (at least felony) where a deadly weapon was used, including crimes other than those enumerated. This interpretation has been consistently followed. [Citations.]

. . .

"Although this interpretation can be questioned, and its holding is contrary to the theories expressed by some criminal law experts, we are not inclined to depart from it. . . . We therefore reaffirm the rule that under the section the trial court is without power to grant probation in any felony case where a deadly weapon has been used. If there is to be any change in the section it should come from the Legislature."

█ It follows that the present defendants were ineligible for probation if they used a deadly weapon upon a human being. Defendants point to the absence of any trial court finding on that score. A finding that the defendants were *armed* with a *dangerous* weapon is by no means the equivalent of a determination that they *used* a *deadly* weapon. The jury's finding that they were armed with a dangerous weapon fixed the degree of the offense but did not determine eligibility for probation under section 1203, which turns on use of a deadly weapon. (*People* v. *Sheeley,* 159 Cal.App.2d 578, 580 [324 P.2d 65]; *People* v. *Connolly,* 103 Cal.App.2d 245, 248

[229 P.2d 112].) To some extent, the trial judge's statement that the robbery was "bad . . . a cruel thing to do" is an implied finding adverse to defendants. In any event, all intendments and presumptions on appeal are in favor of the judgment, and we cannot presume that the denial of probation was based on an erroneous characterization as to the nature of the weapon. (*People* v. *Sheeley, supra*; *People* v. *Connolly, supra*.)

Were we to resolve, as a matter of law, that section 1203 required the trial judge to make an express finding of deadly weapon use, then error would have occurred, but not error necessarily requiring reversal. The error would justify reversal only if it resulted in a miscarriage of justice or affected defendants' substantial rights. (Cal. Const., art. VI, § 4½; Pen. Code, § 1258.) On the assumption that the trial court's failure to make an express finding was error, it was prejudicial only if, upon a review of the record including the evidence, the appellate court finds a reasonable probability of a finding favorable to defendants. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The character of the tire iron and its use, either as a dangerous or as a deadly weapon, is a question of fact. (*People* v. *Harshaw*, 71 Cal.App.2d 146, 149 [161 P.2d 978].) Generally speaking, a deadly weapon is one likely to produce death or great bodily injury. (*People* v. *Morlock*, 46 Cal.2d 141, 145 [292 P.2d 897].) The character of an implement as a deadly weapon is determined by its capacity to inflict death or injury, and its use as a deadly weapon by the surrounding circumstances, such as the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted. (*People* v. *Jackson*, 230 Cal.App.2d 485, 488 [41 Cal.Rptr. 113]; *People* v. *Raner*, 86 Cal.App.2d 107, 112 [194 P.2d 37]; *People* v. *Raleigh*, 128 Cal.App. 105, 108-110 [16 P.2d 752]; see *People* v. *Southack*, 39 Cal.2d 578, 591 [248 P.2d 12].) According to the testimony, Virginia Shelton first hit the victim across the nose with a tire iron; he fell to the ground, then got up, at which point Lawrence Fisher hit him across the eye with another tire iron. He was hit three or four times and knocked unconscious. He suffered a cut eye, a cut nose and a fractured skull. Later the police found two tire irons in Fisher's car, which was parked near Virginia Shelton's home. The tire irons had been washed clean and were still damp. Used as defendants used them, the tire irons were perfectly

capable of inflicting mortal wounds. That defendants used them, there is no doubt. In view of the evidence, there is no probability at all, let alone a reasonable probability, of a finding that defendants did not use deadly weapons in the commission of their crime.

The present case is materially different from such cases as *People* v. *Alotis, supra*; *People* v. *Southack, supra*; and *People* v. *Johnson,* 140 Cal.App.2d 613 [295 P.2d 493]. In those cases there was evidence from which the trial court could have concluded (or did conclude) that the instrumentality of death or injury was used defensively, negligently, or accidentally, hence not used as a deadly weapon. Here, where defendants deliberately and repeatedly struck their victim on the head with a metal bar capable of causing death, such a conclusion is not reasonably possible. Defendants' classification as offenders ineligible for probation was thus free of prejudicial error, and they cannot assert a right to be considered for probation.

■ Defendant Fisher also objects to the admission of an extrajudicial statement he made to a police officer while he was in custody, on the theory that the statement was inadmissible under the doctrine of *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The statement was neither a confession or an admission, but an alibi which, according to prosecution evidence, was false. Several recent decisions hold that statements exculpatory on their face are outside the ambit of the *Escobedo-Dorado* doctrine. (*People* v. *Erb* *(Cal.App.) [43 Cal.Rptr. 111] ; *People* v. *Soto,* 232 Cal.App.2d 437, 445 [42 Cal.Rptr. 799] ; *People* v. *Ulibarri,* 232 Cal.App.2d 51, 55-56 [42 Cal.Rptr. 409].) Other decisions involving the Escobedo-Dorado rule adopt the assumption that use of such a statement for incriminatory purposes at the trial may be error, yet, since it is a "lesser statement" not amounting to a confession or admission, its evidentiary use will result in reversal only if the error is prejudicial. (*People* v. *Herrera,* 232 Cal.App.2d 558, 560 [43 Cal.Rptr. 12] ; *People* v. *Finn,* 232 Cal.App.2d 422, 428 [42 Cal.Rptr. 704] ; see *People* v. *Underwood,* 61 Cal.2d 113, 120-121 [37 Cal.Rptr. 313, 389 P.2d 937].) Here there is ample evidence of defendants' guilt without regard to the incriminating effect

---

*Reporter's Note: A rehearing was granted in *People* v. *Erb* on April 2, 1965. The final opinion filed July 8, 1965, is reported in 235 Cal.App.2d —— [45 Cal.Rptr. 503].

attributable to the false alibi. Thus, if evidentiary use of Fisher's extrajudicial statement was error, it caused no miscarriage of justice and does not warrant reversal.

Judgment affirmed.

Regan, J., concurred.