[No. 160-41229-1.    Division One—Panel 2.    January 3, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES RAMSEY SORENSON, *Appellant.*

*Robert W. Fetty,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas S. Dunham, Deputy,* for respondent.

JAMES, J.—James Ramsey Sorenson was charged with the crime of assault in the first degree but found guilty of the lesser included offense of assault in the second degree. Specifically, the information alleged that Sorenson "did make an assault . . . with a deadly weapon as defined by RCW 9.95.040, to-wit: a knife, . . ." By a special verdict, the jury found that Sorenson was armed with a deadly weapon at the time of the commission of the offense.

The evidence would permit the jury to find that three strangers, one of them Sorenson, met in the bar of a Bellevue restaurant and began playing "liar's poker." They agreed that the loser would either pay or buy a round of drinks. Sorenson, however, did not buy or pay each time he lost, and the player who later became the victim of the assault, objected. Sorenson left the bar but returned shortly. The victim testified that he heard Sorenson say in a low voice, "I'm going to give you a drink. . . . I'm going to give you a drink of blood."

The victim then turned and saw that Sorenson held an instrument in his hand which had a blade "approximately an inch and a half long." He described the instrument as "a spear that you clamp on your finger, something like a twine cutting spear, a knife, only this was longer and clamped all the way up on the finger." Sorenson testified that upon returning to the bar, he took his penknife in hand to "scare" the victim. It is undisputed that Sorenson then "grabbed" the victim by the throat and pushed or knocked him to the floor. As a result of the assault, the victim suffered a serious laceration of his neck.

Sorenson assigns error to the admission into evidence of the victim's hospital record. He points out that although the Uniform Business Records as Evidence Act, RCW 5.45, permits hospital records to be introduced into evidence upon identification by a custodian, such records may not be used as a device for introducing otherwise inadmissible evidence. *Young v. Liddington*, 50 Wn.2d 78, 309 P.2d 761 (1957). Sorenson fails to point out, however, that the hospi-

tal record contained any inadmissible evidence. The assignment is therefore without merit.

Sorenson assigns error to the giving of instruction 11. The instruction concerns justification and self-defense, and is a correct statement of the law. Sorenson does not question the accuracy of the instruction but states it to be his "position that there was *no* evidence to establish that [he] had provoked or instigated the assault, and, therefore, the giving of the instruction was improper." (Italics ours.) Sorenson's "position" is simply not supported by the record. There is substantial evidence to establish that he made an unprovoked assault.

Although Sorenson retained trial counsel of his choice, he claims that the trial judge "erred in allowing [him] to proceed through his jury trial with incompetent counsel, and thusly [he] was deprived of his constitutional right to a fair and impartial trial."

■ When confronted with this increasingly frequent claim, an appellate court must examine the entire record to ascertain whether the accused was afforded effective representation and a fair and impartial trial. *State v. Thomas*, 71 Wn.2d 470, 429 P.2d 231 (1967). The same standard applies whether counsel is appointed or retained. *State v. Robinson*, 75 Wn.2d 230, 450 P.2d 180 (1969).

We have examined the entire record and find the claimed error to be without merit. As the court observed in *State v. Thomas, supra* at 472, "[s]ome defendants are, in fact, guilty and no amount of forensic skill is going to bring about an acquittal." In judging his trial counsel's effectiveness, it should not be overlooked that Sorenson might well have been convicted of assault in the first degree.

Finally, we consider Sorenson's claim that the trial judge erred in submitting a special "deadly weapon" verdict pursuant to RCW 9.95.015:

> In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an *allegation* and evidence establishing that the accused was armed with a *deadly* weapon at the time of the

commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a *special verdict* as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime.

(Italics ours.) RCW 9.95.040 provides in part as follows:

The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

The words "deadly weapon," as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, *any knife having a blade longer than three inches*, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

(Italics ours.)

■ Relying upon *State v. Williams*, 3 Wn. App. 336, 475 P.2d 131 (1970), Sorenson first contends that a special verdict should not have been submitted because his weapon was a *knife* with a blade shorter than 3 inches. We do not agree. The command of RCW 9.95.040 is unambiguous. When an information *alleges* "that [an] accused was armed with a *deadly* weapon at the time of the commission of the crime," and there is *evidence* to support the allegation, "the jury *shall,* if it find the defendant guilty, also find" by

special verdict whether the accused was armed with a weapon, and if so, whether the weapon was "deadly" as that term is defined in RCW 9.95.040.

We interpret RCW 9.95.015 and 9.95.040 to *require* the submission of the special interrogatory when the information charges that the accused was armed with a "deadly" weapon and there is evidence that the wounds inflicted could have been fatal even though the weapon was a knife with a blade less than 3 inches in length.

Concerning the wounds which Sorenson's victim sustained, the treating surgeon testified that:

> The wound was made by a sharp object. The wound had penetrated through the superior muscle in the neck, down on to the vein, the anterior vein, which is below this level. There was no perforation of the esophagus or trachea. The penetration was anterior to the carotid artery, which, of course, if that is lacerated, is generally fatal unless you have a physician there to compress it at the time of injury.
>
>    . . .
>
> With a wound like this in the neck where there are many vital structures, including the esophagus and trachea, one has to consider this a potentially serious injury, especially with the venous blood, which could be from a large venous vein, namely, the jugular vein which is quite large. And if it has a hole in it, it can go to the patient's heart and cause instant death.

■ By statutory definition, a "knife having a blade longer than three inches" is a deadly weapon as a matter of law. But whether a knife with a blade of less than 3 inches is a *deadly* weapon is a question of fact.

> The character of an implement as a deadly weapon is determined by its capacity to inflict death or injury, and its use as a deadly weapon by the surrounding circumstances, such as the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted.

*People v. Fisher*, 234 Cal. App. 2d 189, 193, 44 Cal. Rptr. 302 (1965). Under proper instruction, the jury could have found

that Sorenson's penknife with a 1½-inch blade was a deadly weapon.

Finally, however, Sorenson points out that in submitting the special verdict, the trial judge failed to define the term "deadly weapon" for the jury. Without definition, the jury had no guiding standard and could not competently make the required finding. By the mandatory language of RCW 9.95.015, it is the trial judge's responsibility to instruct the jury sua sponte in statutory terms even though not requested to do so. It is error to submit the special verdict without the statutory definition.

The error, however, is harmless insofar as Sorenson was found guilty of assault. Accordingly, the judgment of conviction is affirmed and the cause remanded with instruction to void the special verdict and to strike the reference to a 5-year minimum term from the judgment.

FARRIS, A.C.J., and SWANSON, J., concur.