[No. 28187-9-I. Division One. April 19, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. CALVIN R. COOK, *Appellant.*

day care for small children is a problem of immense proportions in North Carolina"), *review denied*, 330 S.C. 123 (1991).

*Helen Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Patricia Hall Clark, Deputy,* for respondent.

PEKELIS, A.C.J. — Calvin R. Cook appeals from his conviction on one count of attempted first degree robbery. Cook contends that there was insufficient evidence to support his conviction and that the trial court gave an erroneous deadly weapon instruction which resulted in the enhancement of his sentence. We affirm.

## I

In December 1990, Thomas Wright, age 69, hired Cook to paint his house for $250. Wright agreed to pay Cook a portion of the money every evening after Cook finished work. Wright made several payments pursuant to this plan, including one for $150.

On January 14, 1991, Cook went to Wright's home and informed Wright that he needed money. After a brief discussion, Cook displayed a Confederate $100 bill belonging to Wright and offered to sell it back to him for $5. Wright refused, stating that "[i]f you want it so bad, you keep it." Cook continued asking for money and "started getting loud". Wright told Cook to leave and dialed 911, but then hung up. When Cook persisted, Wright again told him to leave and redialed 911. This time Cook pulled the telephone out of the wall, brandished a pocketknife, and held the blade to Wright's throat. According to Wright, Cook said, "You called me a punk" and then "tried to take my rings off my finger." At that point, the police arrived and Cook fled out a back door.

The police officers carried Wright, a double amputee, to their patrol car and drove to Cook's home. After failing to locate him there, the officers returned to Wright's home where they found Cook inside. The officers frisked Cook and seized a wallet and a watch belonging to Wright and the pocketknife. Cook was charged by information with attempted first degree robbery and residential burglary. The information also alleged that the knife was a deadly weapon for purposes of penalty enhancement under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A.310(3).[1]

At trial, Wright testified on cross examination that although Cook did not actually discuss money or property while he held the knife, Cook did "tr[y] to take my rings". Wright could not recall whether he told the arresting officers about the rings, but Seattle Police Detective Richard Gagnon testified that Wright did not.

At the conclusion of testimony, the trial court submitted, over defense counsel's objection, a deadly weapon instruction to the jury for sentence enhancement purposes. Defense

---

[1] RCW 9.94A.310(3) states in part:

"The following additional times shall be added to the presumptive sentence if the offender . . . was armed with a deadly weapon as defined in this chapter and the offender is being sentenced . . . for an anticipatory offense under chapter 9A.28 RCW to commit one of the crimes listed in this subsection . . .:

"(a) 24 months for . . . Robbery 1 (RCW 9A.56.200)".

counsel argued that the instruction incorrectly defined the term deadly weapon and should be replaced by WPIC 2.07. The court reasoned, however, that the instruction was adequate as given when read together with the preceding instruction defining a deadly weapon for purposes of the attempted robbery charge. The jury found Cook guilty as charged and returned a special verdict that the knife was a deadly weapon under the sentencing statute.

## II

On appeal, Cook first contends that there is insufficient evidence to establish that he took a "substantial step" toward committing first degree robbery.[2] He asserts that he drew the knife in response to being called a "punk", not to take Wright's property. The State counters that Cook took a substantial step when, while placing the knife at Wright's neck, he attempted to remove the rings from Wright's finger.

■ Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Salinas*, 119 Wn.2d at 201.

■ At trial, the State was required to prove that Cook (1) intended to take Wright's personal property against his will, (2) while armed with or displaying what appeared to be a deadly weapon, and (3) took a substantial step toward the commission of the act. RCW 9A.28.020(1); RCW 9A.56.190; RCW 9A.56.200. "[C]onduct is not a substantial step 'unless it is strongly corroborative of the actor's criminal purpose.'" *State v. Workman*, 90 Wn.2d 443, 451, 584 P.2d 382 (1978) (quoting the Model Penal Code § 5.01(2) (Proposed Official Draft 1962)).

■ Here, Cook's actions were strongly corroborative of his intent to commit the robbery. On both direct and cross

---

[2]Cook does not challenge his conviction for residential burglary.

examination Wright testified that Cook tried to take several rings from his finger *while* holding the knife at Wright's throat. Cook disputes this reading of the record, claiming that Wright's testimony is unclear about the timing of events. Nevertheless, Wright's testimony reasonably could have been understood by the jury as meaning that Cook brandished the knife and reached for the rings at the same time. Thus, the evidence is sufficient to establish that Cook took a substantial step toward committing the robbery.

## III

Cook next contends that the trial court gave an erroneous deadly weapon instruction for sentencing purposes. Cook argues that the instruction misstates the law because it allowed the jury to return a special verdict without finding that the knife was capable of causing death. The State responds that the instruction adequately stated the law and, alternatively, that any instructional error was harmless.

Under the SRA, 2 years "shall be added to the presumptive sentence" if the defendant is armed with a deadly weapon and convicted of first degree robbery or another enumerated crime. RCW 9.94A.310(3). The SRA specifically defines a "deadly weapon" as an

> implement or instrument which has the *capacity to inflict death* and from the manner in which it is used, *is likely to produce or may easily and readily produce death*. The following instruments are included in the term deadly weapon: . . . any knife having a blade longer than three inches . . ..

(Italics ours.) RCW 9.94A.125.

Rather than give Cook's proposed instruction WPIC 2.07, which tracks the language of RCW 9.94A.125, the trial court gave the following instruction:

### No. 14.

For purposes of the special verdict, a knife having a blade longer than three inches is a deadly weapon. Whether a knife having a blade less than three inches is a deadly weapon is a question of fact.[3] The character of an implement as a deadly weapon is determined by its capacity *to inflict death or injury,*

---

[3]The knife used by Cook had a blade of less than 3 inches.

and its use as a deadly weapon by the surrounding circumstances, such as the intent and present ability of the user, the degree of force, the part of the body to which it was applied, and the physical injuries inflicted.

The State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon.

(Italics ours.)

 This instruction is an incorrect statement of the law. RCW 9.94A.125 expressly limits the definition of a deadly weapon to an implement which has "the capacity to inflict death" and is used in a way such that it "is likely to produce or may easily and readily produce death." Similarly, the Supreme Court has stated that, for sentencing purposes, a deadly weapon is one which is capable of producing death under the circumstances of its use. *State v. Thompson*, 88 Wn.2d 546, 549, 564 P.2d 323 (1977) (interpreting former RCW 9.95.040); *see also State v. Cobb*, 22 Wn. App. 221, 223, 589 P.2d 297 (1978) (interpreting former RCW 9.95.040), *review denied*, 92 Wn.2d 1011 (1979); *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972) (interpreting former RCW 9.95.040). Under the trial court's instruction, however, the jury did not have to find that the pocketknife had the capacity to cause *death*; rather, the instruction permitted the jury to return a special verdict merely by finding that the knife could have *injured* the victim.

In rejecting Cook's proposed WPIC 2.07, the trial court reasoned that the instruction given was adequate when read together with the preceding instruction which defined a deadly weapon for purposes of the attempted robbery charge.[4] However, this reflects a confusion between the elements of the substantive crime and the elements of the deadly weapon special verdict. For purposes of proving attempted robbery the State need only prove, as instruction 13 correctly states, that the weapon had the capacity to cause death *or serious*

---

[4]Instruction 13 states:

"Deadly weapon means any weapon which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or *serious bodily injury*." (Italics ours.)

*bodily injury.*[5] When seeking an enhanced sentence, however, the State must prove that the weapon had the capacity to cause death and death alone.

For these reasons, the trial court's instructions were inadequate to define the elements of deadly weapon within the meaning of RCW 9.94A.125 and .310(3).[6]

■ Although the trial court gave an incorrect deadly weapon instruction, reversal is only required if the error was prejudicial. An erroneous instruction given on behalf of the party who received a favorable verdict is presumed prejudicial and is grounds for reversal unless it is harmless. *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977). A harmless error is a trivial error which in no way affected the outcome of the case. *Wanrow*, 88 Wn.2d at 237.

It is undisputed here that Cook held the pocketknife to Wright's throat. Clearly, under these facts, the knife had the "capacity to inflict death", and was used in a manner which would "likely . . . or [might] easily and readily produce death." RCW 9.94A.125. Therefore, despite the trial court's incorrect instruction, there was simply no basis for the jury to conclude that the weapon used here could cause injury *but not* death. Hence, we conclude the error had no effect on the outcome of the special verdict.

Affirmed.

COLEMAN and AGID, JJ., concur.

---

[5] RCW 9A.04.110(6), which defines a deadly weapon for purposes of the Washington Criminal Code, states:

"(6) 'Deadly weapon' means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of *causing death or substantial bodily harm*". (Italics ours.)

[6] We are mindful that both *Thompson* and *Sorenson* quote a California case, *People v. Fisher*, 234 Cal. App. 2d 189, 193, 44 Cal. Rptr. 302 (1965), which includes a reference to the "capacity to inflict death or injury". Nevertheless, both *Thompson* and *Sorenson* clearly recognize that the ultimate issue under *our* sentence enhancement scheme is whether the knife is capable of producing *death*. See *Thompson*, 88 Wn.2d at 549; *Sorenson*, 6 Wn. App. at 273.