**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON<br><br>                    Respondent,<br><br>          v.<br><br>MICHAEL RONALD WILKINS,<br><br>                    Appellant. | No. 81833-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Wilkins appeals from a judgment and sentence rendered against him for assault in the second degree with a deadly weapon sentence enhancement. First, Wilkins contends the prosecution failed to prove he possessed and used a deadly weapon. Second, he contends the trial court impermissibly coerced the jury to answer "yes" on the special verdict form. Third, he contends the State's questions during voir dire and remarks during its opening statement undermined his right to a fair trial. Fourth, he argues the court improperly ordered interest imposed on mandatory legal financial obligations. We affirm.

## FACTS

On July 8, 2017, Deonta Wilkerson and Rakim Robinson were leaving a club in Tacoma. While pulling out of his parking spot, Wilkerson hit bumpers with a pickup truck driven by Michael Wilkins. Wilkerson and Wilkins exited their vehicles, and Wilkins immediately punched Wilkerson in the jaw. A fight broke out.

Wilkerson stated he was calling the police. Wilkerson and Robertson got back in their car, but Wilkins and others jumped on the car and tried to get inside.

Wilkerson called the police a second time. Both men again exited the vehicle, and another altercation broke out between the two groups.

An independent witness, Robert Williams, saw Wilkins stab Wilkerson. He initially told police he saw Wilkins use a 5 to 6 inch knife, but later testified he was not sure of the length or type of the weapon Wilkins used. Witness Matthew Fields testified he saw that Wilkins had a leather sheath, consistent with the kind used for a knife, on his right side. Wilkerson testified that he grew concerned when Wilkins approached him with his hand close to his side. Wilkerson then knocked Wilkins to the ground. Wilkerson realized he had sustained a cut to his back and was bleeding profusely as well as throwing up blood.

Wilkins's group left the scene in his pickup truck. Wilkerson was able to take a photo of Wilkins's pickup truck's license plate with his phone.

When Ruston Police Officer Clayton Grubb arrived, he observed Wilkerson lying down with large lacerations on his back and side. Wilkerson was taken to the hospital and was classified as critical upon arrival.

At the hospital, Wilkerson learned he had suffered several injuries, including a penetrating wound which had punctured his kidney. The wound was 5.5 inches wide and approximately three inches deep. Doctors monitored Wilkerson's condition for four days while he stabilized.

Wilkins was charged with assault in the first degree, assault in the second degree, and felony harassment. Each charge carried a deadly weapon sentencing enhancement.

During voir dire, Wilkins objected to several remarks made by the State regarding discussion of law and speculative questioning, on the grounds the State was trying to "indoctrinate" the jury. Wilkins eventually asked for a mistrial. The court sustained several objections but denied the motion for a mistrial.

During the State's opening statement, the court sustained objections made by Wilkins to the prosecutor's discussion of the law. The prosecutor asked to be heard on the issue of whether she could discuss the elements in detail, and the judge asked the jury to leave the room. At that time, Wilkins moved to dismiss for prosecutorial misconduct in the State's opening statement. Wilkins argued the court had already sustained its objections and instructed the prosecutor to stop discussing the law, but she had continued to do so. Wilkins again asked the court to declare a mistrial. The court reiterated to the prosecutor that her comments explaining the law were inappropriate. The court did not grant a mistrial, but told the prosecutor, "I'm going to give the law at the end. I need you to stop that and you need to wrap up." The jury was called back in and the case proceeded.

At the conclusion of the State's case, the court granted Wilkins's motion to dismiss the felony harassment charge for lack of evidence. Finding there was only one act of assault, the court also dismissed the separate charge of second degree assault, making second degree assault the lesser included of count I, assault in the first degree. The court instructed the jury on first degree assault and the lesser

3

included offenses of second, third, and fourth degree assault. It presented the jury with a special verdict form for the deadly weapon sentencing enhancement.

The jury concluded deliberations, returning verdict form A, stating Wilkins was not guilty of first degree assault, and verdict form B, finding Wilkins guilty of second degree assault. The jury had not filled out verdict forms C and D for the lesser charges of third and fourth degree assault. Nor had it filled out the special verdict form for the deadly weapon sentencing enhancement. The court discussed which forms had been left blank with the presiding juror:

> THE COURT: Verdict Forms C and D are blank and the Special Verdict Form is blank.
>
> PRESIDING JUROR: Did we forget that?
>
> THE COURT: Yes.
>
> I'm just going to send you right back in with all the instructions. If you can't agree, there's an option for that, too.
>
> I'm going to excuse you to fill out the Special Verdict Form.

Neither party objected. And the jury returned to the jury room to fill out the form. When the jury returned, it convicted Wilkins of second degree assault with a deadly weapon enhancement. The court confirmed by a raise of hands that the verdicts reflected the personal vote of each juror.

After the jurors exited, defense counsel then objected, arguing the initial blank special verdict form had been the verdict of the jury. The trial court disagreed, stating that "the Special Verdict Form indicates, 'The answer section above has been intentionally left blank,' and that wasn't signed either." The court reasoned that, because the form was not signed, followed several other blank

4

forms, and the jury was gone for "maybe two minutes" to fill in the form, it had been an oversight.

The court sentenced Wilkins to 26 months in prison, including a 12 month deadly weapon enhancement. It also imposed a crime victim assessment and restitution. It found Wilkins indigent and declined to impose the discretionary filing fee.

Wilkins appeals.

DISCUSSION

Wilkins appeals on four grounds. First, he argues the evidence was insufficient to find him guilty of the deadly weapon sentencing enhancement. Second, he contends the trial court impermissibly coerced the jury into reaching a verdict when it sent the jury back to fill out the special verdict form. Third, he contends remarks by the State during voir dire and its opening statement constituted prosecutorial misconduct. Finally, he contends the court erred in ordering interest imposed on a mandatory legal financial obligation (LFO), requiring remand to strike the provision from his judgment and sentence.

I. Deadly Weapon Sentencing Enhancement

First, Wilkins asserts that there was insufficient evidence to support the jury's finding that Wilkins was armed with a deadly weapon at the time he assaulted Wilkerson.[1]

---

[1] Wilkins does not assign error to his conviction for second degree assault that required the jury to find either that he assaulted Wilkerson with a deadly weapon, or assaulted Wilkerson and recklessly inflicted substantial bodily harm.

5

We review a jury's special verdict finding under the sufficiency of the evidence standard. State v. Stubbs, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). In a sufficiency of the evidence challenge, we must determine, considering the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the sentencing enhancement beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). The burden is on the defendant to establish that the evidence was in fact insufficient. State v. Eckenrode, 159 Wn. 2d 488, 496, 150 P.3d 1116 (2007). An insufficiency of the evidence claim admits the truth of the prosecution's evidence and all inferences that the trier of fact could reasonably draw from it. State v. King, 135 Wn. App. 662, 668, 145 P.3d 1224 (2006). We defer to the trier of fact to resolve any conflicts in testimony, to weigh the persuasiveness of evidence, and to assess the credibility of the witnesses. Id. Circumstantial evidence is as probative as direct evidence. State v. Rangel-Reyes, 119 Wn. App. 494, 499, 81 P.3d 157 (2003).

A "deadly weapon" is "an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825.

Certain specifically enumerated weapons are per se deadly weapons, including "any knife having a blade longer than three inches." RCW 9.94A.825. Other weapons, such as knives less than three inches in length, can be deadly weapons. State v. Thompson, 88 Wn.2d 546, 549, 564 P.2d 323 (1977). Whether

a weapon is a "deadly weapon" depends on the surrounding circumstances, such as the intent and present ability of the user, the degree of force, the part of the body to which it was applied, and the physical injuries inflicted. Id. at 548-49.

The prosecution did not contend that the weapon used to stab Wilkerson was definitively a knife with a blade over three inches. As a result, it needed to prove the weapon had the capacity to inflict death from the manner in which it was used.

Wilkins contends the State provided "no evidence the tool that injured . . . Wilkerson was actually used in a way that was likely to kill." However, viewed in the light most favorable to the prosecution, there was sufficient of evidence to support finding the implement used by Wilkins constituted a "deadly weapon."

A small knife held to a person's throat constitutes a "deadly weapon" for the purposes of a sentencing enhancement. Thompson, 88 Wn.2d at 550; State v. Cook, 69 Wn. App. 412, 418, 848 P.2d 1325 (1993). In Thompson, evidence the victim "sustained a cut on her neck and bruises on her right arm" was sufficient to demonstrate a pocketknife had been used as a "deadly weapon." Thompson, 88 Wn.2d at 550. In Cook, though the victim was not injured, holding the knife to the victim's throat was on its own held to have the "capacity to inflict death." Cook, 69 Wn. App. at 418.

This case is analogous to Thompson and Cook. When Wilkerson arrived at the hospital, he had multiple serious injuries, including a wound penetrating his right kidney and a fractured right rib. At trial, Dr. Long Tran, the surgeon who treated Wilkerson, testified that "if you have a penetrating injury and it does

7

penetrate a solid organ, the risk of death is always in our thoughts." The location of Wilkerson's wounds raised concerns for Dr. Tran regarding injury to a number of "solid organs, vascular organs, [and/or] intestines."

Further, Wilkins conceded at trial that "any time a person gets stabbed, it is life-threatening." Wilkins instead argued that he was not the person who stabbed Wilkerson. The jury heard testimony from an independent witness who saw Wilkins stab Wilkerson. They also heard testimony from Wilkerson and his friend about the nature of the attack. And, they heard testimony from a witness who saw Wilkins's knife sheath on his belt. This testimonial evidence sufficiently supported the jury's conclusion that Wilkins committed the assault with a deadly weapon, and the weapon had capacity to inflict death from the manner in which it was used. The jury was free to rely on that evidence.

We hold that there was sufficient evidence for the jury to find beyond a reasonable doubt that Wilkins was armed with a "deadly weapon" at the time he assaulted Wilkerson for the purposes of the sentence enhancement.

## II. Coercive Instruction

Next, Wilkins contends the trial court impermissibly coerced the jury's verdict by sending it back to complete the special verdict form. We disagree.

A court may not suggest to jurors that they must reach a decision. See Jenkins v. United States, 380 U.S. 445, 446, 85 S. Ct. 1059, 13 L .Ed. 2d 957 (1965) (finding court's statement, "You have got to reach a decision in this case," unduly coercive). Jurors must be free from judicial pressure in reaching their verdict. State v. Boogaard, 90 Wn.2d 733, 736, 585 P.2d 789 (1978). Instructions

from the court suggesting a juror who disagrees with the majority should abandon his or her conscientiously held opinion for the sake of reaching a verdict invades the defendant's right of jury trial.  Id.

CrR 6.15(f)(2) provides, "After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate."  It does not prohibit the court from providing supplemental instructions.  State v. Watkins, 99 Wn. 2d 166, 175, 660 P.2d 1117 (1983).

In determining whether the verdict was improperly influenced, we consider the totality of circumstances regarding the trial court's intervention into the jury's deliberations.  Id. at 177.  And, it must be determined whether the jury was still within its deliberative process, and if so, whether it was still undecided.  See State v. Ford, 171 Wn.2d 185, 189, 250 P.3d 97 (2011).

The jury had already announced it had reached a verdict when the court sent it back to fill out the form.  Nothing in the record indicates the jury had been deadlocked.  The special verdict form contained two possible options to answer the question, "Was the defendant Michael Wilkins armed with a deadly weapon at the time of the commission of the crime?"  The first option was to "write 'yes' if unanimous agreement that this is the correct answer" and included a signature line.  The second option indicated, "The answer section above has been intentionally left blank" and also included a signature line.  The presiding juror did not sign either section.  The court confirmed with the presiding juror that the special verdict form was left blank as an oversight.  The jury returned from filling out the

9

form after approximately two minutes, suggesting no further deliberations took place. Further, the court polled the jurors by a show of hands upon their return to confirm the special verdict form represented their personal votes.

Given the instructions on the special verdict form that required a signature regardless of the jury's intention to fill it out or leave it blank, it was reasonable to send it back to mark the form to reflect its intentions. The trial court did not impermissibly influence the jury's verdict.

III. Prosecutorial Misconduct

Next, Wilkins contends the State's questions in voir dire and remarks during its opening statement were misconduct and tainted the jury by implying the State had other evidence that would not be admitted.

The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Prosecutorial misconduct may constitute a deprivation of the defendant's constitutional right to a fair trial. Id. at 703-04.

To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of showing the prosecutor's conduct was both improper and prejudicial. State v. Ish, 170 Wn.2d 189, 195, 241 P.3d 389 (2010). To establish prejudice, the defendant must show a substantial likelihood that the error affected the jury verdict. Glasmann, 175 Wn.2d at 704. The trial judge is generally in the best position to determine whether the prosecutor's actions were improper and whether,

under the circumstances, they were prejudicial. Ish, 170 Wn.2d at 195-96. We review rulings on allegations of prosecutorial misconduct for abuse of discretion. Id. at 196.

During voir dire, Wilkins first objected to a statement by the prosecutor that jurors would "likely hear from police officers who have authored reports." The court sustained the objection. Several other objections by Wilkins regarding the prosecutor's comments on potential evidence or speculative lines of questioning were sustained. At that point the prosecutor clarified that what she wanted to know was whether the juror could decide the case on what the juror had heard without regard to other kinds of evidence it had not received. After several more objections from defense counsel that were sustained, the court asked the jury pool to step outside. The court directed the prosecutor to stop asking jurors to speculate on what they might do, and stated that this was inappropriate in terms of trying to get to their qualifications as jurors. The court further stated, "I really disapprove of you trying to tell them what the law is that I'm going to tell them at some point." At that time, Wilkins asked for a mistrial, arguing the prosecutor was attempting to "indoctrinate this jury." The court denied the motion but stated, "[I]t's getting close to getting rid of the whole panel."

Wilkins also made several objections to the prosecutor's discussion of the law during its opening statement that were sustained. The court again asked the jury to leave the room. Wilkins moved to dismiss for prosecutorial misconduct in the opening statements. The court advised the prosecutor not to discuss the elements of the crime and to modify what she planned to discuss where objections

11

had been sustained. The prosecutor argued she had a duty to cover the elements of the crime in opening argument. The court indicated that opening argument was to provide the jurors an overview of the evidence they would receive and how that might prove the crime, not to instruct on the law. The court did not dismiss the case, instead calling the jury back into the courtroom.

Allegedly improper arguments should be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instruction. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). We take no issue with the trial court sustaining the objections and admonishing the State for its improper remarks during voir dire and its opening statement. The question then becomes whether these improper remarks were so prejudicial as to require a new trial. Ish, 170 Wn.2d at 195-96 (conduct must be both improper and prejudicial).

Wilkins argues the State's remarks tainted the jury by offering a "one-sided view of the law." Where the State improperly discussed the law, Wilkins's objections were sustained by the court. The trial court gave the law in the form of jury instructions. The jury was instructed to decide the case based upon only admitted evidence, and not to speculate about whether inadmissible evidence would have favored one party or the other. The jury was instructed that "the lawyers' statements are not evidence." It was instructed that the State had the burden of proving each element of the crime beyond a reasonable doubt and was provided with the elements of each crime.

Jurors are presumed to follow the court's instructions. State v. Henson, 11 Wn. App. 2d 97, 105, 451 P.3d 1127 (2019). Wilkins makes no direct assertion that the jury did not follow the law in reaching its verdict. He has failed to demonstrate a substantial likelihood that the verdict was improperly affected by the prosecutor's statements on the law.

At trial, Wilkins and the State both argued there were two key issues: the identity of the assailant and the degree of Wilkerson's injuries. The State presented testimonial evidence regarding both the extent of Wilkerson's injuries and the identification of Wilkins as the assailant. The jury was free to rely on that testimony. Wilkins does not argue the evidence at trial was insufficient for the jury to support his conviction for assault in the second degree or to find that Wilkins was the assailant.

Wilkins argues the evidence was not overwhelming and the State's comments during voir dire were prejudicial, because they represented an "improper theme" suggesting it had evidence outside the record from which the jury could infer guilt, minimizing its burden of proof. Wilkins's objections to the comments and questioning during voir dire were sustained by the trial court. Wilkins did not request any of the questioning during voir dire be stricken. However, the trial court on its own initiative struck one comment about a hypothetical situation when Wilkins made an objection to "indoctrination." The jury was aware the prosecutor was being corrected repeatedly for what Wilkins describes as an inappropriate theme or indoctrination.

On appeal Wilkins focuses on the State's remarks at voir dire that the jury would likely not receive police reports or transcripts of testimony, inquiring if they would be comfortable deciding based on testimony. The court promptly sustained Wilkin's objection, and informed the prosecutor in front of the jury pool that the court was responsible for informing the jurors "what evidence is going to be admitted." The trial court ultimately made clear to the prosecutor that asking the jurors to speculate about what they might do was "inappropriate, in terms of trying to get to their qualifications as jurors."

And, the jury was not left to speculate about the evidence. In its opening statement the State identified the evidence the jury was expected to hear. The State explicitly acknowledged that it had not recovered a knife. It would have to prove the assault without it. It reiterated the lack of a weapon at closing. The State made no reference in its opening (or its closing) to other evidence outside the record nor to a lowered burden of proof. Wilkins did not object to the State's description of the evidence it would produce.[2]

Viewed in the context of the total argument, Wilkins has not demonstrated a substantial likelihood that the State's remarks were so prejudicial that without them the result in his case would have been different. The trial court's denial of Wilkins's motion to dismiss was not an abuse of discretion. He is not entitled to a new trial.

---

[2] Wilkins objected to the State's attempt to characterize the evidence he would present that led the court to comment that "it sounded more like closing" and sustain the objection.

IV. Interest Accrual

Finally, Wilkins asserts that the interest accrual provision must be stricken from the judgment and sentence for the $500 victim assessment fee imposed by the trial court. In 2018, the legislature amended several statutes addressing LFOs. LAWS OF 2018, ch. 269, § 1. As a result, RCW 10.82.090(1) now requires that no interest accrues on nonrestitution LFOs.

Citing RCW 10.82.090, the judgment form stated that interest accrued on all LFOs imposed "from the date of the judgment until payment in full." Wilkins's judgment and sentence was filed April 5, 2019. Thus, the changes in law had already taken effect, and the citation to RCW 10.82.090 clearly indicates that no interest can accrue on Moreno's nonrestitution LFOs. Accordingly, it is unnecessary to remand to strike the interest accrual provision.

We affirm.

_Appelwick, J._

WE CONCUR:

_Andrus, A.C.J._