# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59364-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| D.R., | |
| Appellant. | |

CHE, J. — D.R. appeals his adjudication of guilty for possessing a dangerous weapon on school facilities under RCW 9.41.280.

A school employee found D.R. in an unauthorized space at his high school. As a result, the employee searched D.R.'s backpack, which contained a paring knife with a fixed 2 to 2.5 inch blade. The juvenile court adjudicated D.R. guilty of possessing a dangerous weapon on school facilities.

D.R. argues in part, that insufficient evidence supports the juvenile court's conclusion that the knife was an "other dangerous weapon" as defined by RCW 9.41.250 because D.R. was not using the knife in a dangerous manner. We hold that, under the facts of this case, there was insufficient evidence to support the determination that the knife found in D.R.'s backpack qualified as a dangerous weapon.[1]

---

[1] We note that this decision does not impact any school's or school district's ability to enforce its disciplinary policies related to bringing weapons to school.

Accordingly, we reverse and remand to the trial court to vacate the guilty adjudication and dismiss the charge with prejudice.

FACTS

In January 2024, school security coordinator, Mike Lowrey, learned of a group of students congregated in a staff bathroom. That group of students included D.R. Lowrey made contact and searched the students and their backpacks. In D.R.'s backpack, Lowrey found a small, fixed blade, paring knife.

Deputy Blake Teitzel arrived at the school and placed D.R. under arrest for possessing a dangerous weapon on school facilities. Deputy Teitzel took photographs of the knife found in D.R.'s backpack.

The State charged D.R. with possessing a dangerous weapon on school facilities under RCW 9.41.280.

At the adjudication hearing, witnesses testified consistently with the facts above. Additionally, Christina Dichoso, a home economics and family health teacher at D.R.'s high school, testified. She explained that in January of 2024, D.R. was one of her health class students. Although D.R. was not a student in her cooking classes, he sat within arm's reach of where she had kept the paring knives for her cooking classes. She did not authorize D.R. to possess the school paring knives at any time.

The week prior to the paring knife being found in DR's backpack, Dichoso noticed a paring knife had gone missing from her classroom. After examining exhibits 1, 2, and 3 (photographs of the knife found in D.R.'s backpack), Dichoso confirmed that the knife in the

photographs had been taken from her classroom. Dichoso described the knife blade being about 2.5 inches long.

The juvenile court adjudicated D.R. guilty of possessing a dangerous weapon on school facilities. The court sentenced D.R. to community supervision, community restitution service work, and several days of confinement.

Later, the juvenile court entered written findings of fact and conclusions of law. It found, in pertinent part, that "[t]he paring knife had a blade of approximately 2 [inches] to 2.5 [inches]." Clerk's Papers (CP) at 29. The court concluded,

     a.      The knife depicted in Exhibits 1, 2, and 3, and possessed by the respondent is an 'other dangerous weapon' as defined under RCW 9.41.250.

     b.      This Conclusion is supported by case law.

     c.      The State of Washington has met its burden, and the respondent is guilty as charged.

CP at 30.

D.R. appeals.

## ANALYSIS

D.R. argues that there was insufficient evidence to support his guilty adjudication under RCW 9.41.280 because the paring knife found in his backpack does not constitute an "other dangerous weapon" as defined by RCW 9.41.250. We agree that there is insufficient evidence to

support the juvenile court's determination that the paring knife constituted a dangerous weapon and reverse the guilty disposition.[2]

## I. LEGAL PRINCIPLES

The question on review for sufficiency of the evidence is whether "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Roberts*, 5 Wn.3d 222, 231, 572 P.3d 1191 (2025) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

RCW 9.41.280 states that

[i]t is unlawful for a person to knowingly carry onto, or to possess on, public or private elementary or secondary school premises . . .
    (a) Any firearm;
    (b) Any other dangerous weapon as defined in RCW 9.41.250;
    (c) Any device commonly known as "nun-chu-ka [nunchaku] sticks," . . .
    (d) Any device, commonly known as "throwing stars," . . .
    (e) Any air gun, including any air pistol or air rifle . . .
    (f)(i) Any portable device manufactured to function as a weapon and which is commonly known as a stun gun . . . or
    (ii) Any device, object, or instrument which is used or intended to be used as a weapon with the intent to injure a person by an electric shock, charge, or impulse.

---

[2] D.R. further argues the juvenile court's findings of fact and conclusions of law are insufficient because the court did not address an element of the crime, specifically whether he knowingly possessed the paring knife. Because we reverse on insufficiency of the evidence, we do not reach D.R.'s challenge to the adequacy of the juvenile court's findings of fact and conclusions of law under JuCR 7.11(d).

Under RCW 9.41.250(1)(a), dangerous weapons include: "any instrument or weapon of the kind usually known as slungshot, sand club, or metal knuckles, or spring blade knife,"[3] as well as "any dagger, dirk, pistol, or other dangerous weapon."[4] And while both RCW 9.41.250 and RCW 9.41.280 provide examples of weapons that qualify as per se dangerous weapons, neither statute specifically defines "other dangerous weapon."

In an attempt to define "dangerous weapon" under RCW 9.41.250, Division One of this court initially determined that the term dangerous weapon is "*similar* to the term 'deadly weapon,'" as defined by RCW 9.94A.125, which has since been recodified as RCW 9.94A.825.[5] *State v. C.Q.*, 96 Wn. App. 273, 277-78, 979 P.2d 473 (1999) (citing to *State v. Myles*, 75 Wn. App. 643, 645, 879 P.2d 968 (1994), *reversed on other grounds*, 127 Wn.2d 807, 903 P.2d 979 (1995)).

RCW 9.94A.825 states in pertinent part that

> a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: . . . any knife having a blade longer than three inches . . . .

---

[3] "'Spring blade knife' means any knife . . . with a blade that is automatically released by a spring mechanism or other mechanical device, or . . . having a blade which opens, or falls, or is ejected into position by the force of gravity, or by an outward, downward, or centrifugal thrust or movement." RCW 9.41.250(2).

[4] RCW 9.41.250 is titled "Dangerous weapons—Penalty." To be convicted under RCW 9.41.250(1)(b), a person must "[f]urtively carr[y] with intent to conceal any dagger, dirk, pistol, or other dangerous weapon." However, when a defendant is charged under RCW 9.41.280, the elements of furtively carrying with intent to conceal need not be proven. *See State v. J.R.*, 127 Wn. App. 293, 299, 11 P.3d 264 (2005) ("Furtively carrying a dangerous weapon with intent to conceal is not an element of RCW 9.41.280.").

[5] RCW 9.94A.125, which defined deadly weapon, was recodified as RCW 9.94A.602, then later to RCW 9.94A.825. Recodified as § 9.94A.602 by LAWS OF 2001, ch. 10, § 6; recodified as RCW 9.94.825 by LAWS OF 2009, ch. 28, § 41.

Thus, "A knife with a blade less than three inches long is only a deadly[, and therefore dangerous,] weapon *if used in a deadly manner*." *State v. Leatherman*, 100 Wn. App. 318, 322-23, 997 P.2d 929 (2000) (emphasis added). Accordingly, the characterization of a weapon, which is not a dangerous weapon per se, rests upon the manner in which the weapon is used.

## II. THE KNIFE IS NOT AN OTHER DANGEROUS WEAPON

At issue here is whether the paring knife, with a blade measuring between 2 to 2.5 inches, found in D.R.'s backpack, constituted an "other dangerous weapon" as defined in RCW 9.41.250. D.R.'s primary argument is that the paring knife found in his backpack did not have a long enough blade to be a deadly weapon per se and was not being used in a manner which was likely to produce, or which may have easily and readily produced, death. We agree.

There is no dispute that the paring knife blade was less than 3 inches long. Thus, the paring knife can only be a dangerous weapon if it is used in a dangerous manner. *See Leatherman*, 100 Wn. App. at 322-23 and RCW 9.94A.825.

Where knives with blades shorter than 3 inches have been found to be deadly weapons, it has been because of the manner in which the knives were being used. *See State v. Cook*, 69 Wn. App. 412, 418, 848 P.2d 1325 (1993) (a pocketknife with a blade shorter than 3 inches was a deadly weapon because it was being held to the victim's throat during the underlying crime) and *State v. Thompson*, 88 Wn.2d 546, 550, 564 P.2d 323 (1977) (a pocketknife with a blade between 2 to 3 inches long was a deadly weapon because it was held to the victim's neck during the underlying crime).

Here, D.R. was not using the paring knife in a dangerous manner. The evidence presented at the fact-finding hearing, even taken in the light most favorable to the State, proves

only that D.R. had the paring knife in his backpack; the paring knife was not being used in any manner. Lowrey testified that he found the paring knife only after bringing D.R. to the school office and conducting a search of D.R.'s backpack. There was no evidence presented that D.R. threatened anyone with the paring knife or was going to use the paring knife in any manner, much less a manner which would be considered dangerous.

The State provided no evidence showing that D.R. was making, or had ever made, any use of the paring knife other than having it in his backpack. Therefore, no rational trier of fact could find beyond a reasonable doubt that, under the facts of this case, the paring knife found in D.R.'s backpack was a dangerous weapon for purposes of RCW 9.41.280. Consequently, there is insufficient evidence to support D.R.'s adjudication of guilt.[6]

Notwithstanding the above, the State argues that *State v. C.Q.*, 96 Wn. App. 273, 979 P.2d 473 (1999), supports a conclusion that the paring knife was a dangerous weapon. The State contends that, unlike the modified starter's pistol in *C.Q.*, the knife in this case is a dangerous weapon because it has the capacity to cause death without any sort of modification. But this argument misinterprets the holding in *C.Q.* and ignores the requirement that if a weapon is not a dangerous weapon per se, the weapon must be used in a manner which would be considered dangerous.

In *State v. C.Q.*, 96 Wn. App. 273, 279, 979 P.2d 473 (1999), Division One of this court determined that an unmodified starter's pistol did not constitute a dangerous weapon under RCW

---

[6] The State seems to suggest that some weapons may be dangerous without necessarily being deadly. We need not decide this assertion because the facts of this case do not allow any rational trier of fact to find that the paring knife was being used in a dangerous manner. Additionally, the paring knife, because it had a fixed blade that was less than 3 inches long, did not qualify as a dangerous or deadly weapon per se.

9.41.250.  The court applied RCW 9.94A.[825], to define a dangerous weapon as "an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death."  *C.Q.*, 96 Wn. App. at 278. Stipulated facts showed that while starter's pistols could cause injury if modified or defective, the starter's pistol in that case was neither modified nor defective.  *Id*. at 275-76.

The State argued that the pistol could have possibly malfunctioned and caused injury, but Division One concluded that it could not "read into the language of the statute a proscription of the carrying of any object that could possibly cause some injury" because "to do so would not be judicial construction of the statute, but judicial legislation."  *Id*. at 278.  In conclusion, the court held that because the starter's pistol "was not used in any fashion other than to rest in the pocket of a sweatshirt[,] [t]here [was] no evidence on the record" that could support a rational finder of fact's finding that the starter's pistol constituted a dangerous weapon under RCW 9.41.280. *C.Q.*, 96 Wn. App. at 279.  Thus, contrary to what the State appears to suggest, *C.Q.* did not alter the requirement that an instrument be used in a manner likely to cause death in order to be considered a dangerous weapon.

Moreover, the State's argument ignores that RCW 9.41.250 specifically lists "spring blade knife," dirk, dagger, and other specific types of knives as per se dangerous weapons, and that RCW 9.94A.825 specifically lists "any knife having a blade longer than three inches" as a per se deadly weapon.  The legislature's decision to list specific types of knives implies that it did not intend to criminalize persons carrying every type of knife on school grounds and instead intended to criminalize only those possessing and using, in an unlawful manner, the types of knives not specifically listed.

The State further argues that our Supreme Court's decision in *State v. Myles*, 127 Wn.2d 807, 903 P.2d 979 (1995), supports the conclusion that the knife found in D.R.'s backpack is a dangerous weapon. However, *Myles* is inapposite. In that case, the Supreme Court never considered whether a 3 inch knife found in the defendant's pocket was a dangerous weapon because the issue was not presented. *Id.* at 817 n.4 (noting that although the defendant had raised the issue of whether there was sufficient evidence to prove the knife was a dangerous weapon to the court of appeals, she had "abandoned that argument" before the Supreme Court). Thus, *Myles* does not support the conclusion that the knife found in D.R.'s backpack was a dangerous weapon, and the State's argument fails.

We hold that, under the facts of this case, there was insufficient evidence that the knife found in D.R.'s backpack constituted a dangerous weapon.

Despite our holding, we agree with the sentiment expressed by Division One of this court in a similar case: "This is not to say that schools and school districts do not have the right to forbid the bringing of any [knife]-like object onto school premises and mete out appropriate sanctions. But the punishment should be appropriate school action, not the filing of a criminal complaint, until such time as the Legislature drafts clear legislation."[7] *C.Q.*, 96 Wn. App. at 278 n.7.

---

[7] "[A]ll known incidents involving the possession of weapons on school premises," as prohibited by RCW 9.41.280, are reported by the superintendent of public instruction to the house of representatives, the senate, and the governor each year. RCW 28A.320.130.

CONCLUSION

Accordingly, we reverse and remand to the trial court to vacate the guilty adjudication and dismiss the charge with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, P.J.

Glasgow, J.